IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 16-130 |
| v. | : | |
| | : | |
| CHARLES M. HALLINAN, et al. | : | |

# O R D E R

**AND NOW,** this **29th** day of **December, 2016,** upon review of Defendants' Motion to Dismiss and the Government's response thereto,[1] it is hereby **ORDERED** that the Motion to Dismiss (ECF No. 65) is **DENIED**.[2]

---

[1]  Because counsel simply "incorporate[d] by reference" what other lawyers filed in another case, oral argument would not be helpful in this case.

[2]  Before the Court is Defendants Hallinan and Neff's motion to dismiss Counts One and Two, the RICO conspiracy counts.

  Federal Rule of Criminal Procedure 12(b)(3)(B)(v) allows a criminal defendant to file a pretrial motion to dismiss an indictment on the basis that the indictment fails to state an offense. An indictment may fail to state an offense "if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002). "The question is merely whether the indictment put the defendants on notice as to the nature of the charges against them, and whether the facts, if proven, are sufficient as a matter of law for a jury to convict." United States v. Ligambi, No. 09-496, 2012 WL 2362636, at *1 (E.D. Pa. June 21, 2012) (Robreno, J.).

  When considering a motion to dismiss an indictment, the court accepts as true the factual allegations contained in the indictment and determines only whether the indictment is valid on its face. See Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

1

Hallinan and Neff argue the following:

> 1. The defendants are charged in Counts One and Two of the indictment with knowingly conspiring to collect unlawful debts in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Stated succinctly, the government alleges that between the time period of 1997 until 2013, the defendants conspired to collect loans that had usurious interest rates under the laws of some of the states in which the loans were made through the use of allegedly "sham" relationships with at first a federally-insured bank and later with sovereign Indian tribes.
>
> 2. RICO defines an "unlawful debt" as one "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury . . . where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). Thus, in order to charge a RICO offense in Counts One and Two the government must plead facts which would establish that the loans made initially through the bank and later through the Indian tribes were "unenforceable" as to either principal or interest under the applicable State or Federal laws relating to usury.

Mot. Dismiss ¶¶ 1-2, ECF No. 65. Defendants apparently contend that the indictment does not contain such facts, because "the doctrine of Tribal Sovereign Immunity precludes application of state usury laws to loans that are made by tribal entities." Id. ¶ 3. In other words, for example, an Indian tribe can make a loan to a Pennsylvania resident, even if the loan would be illegal in Pennsylvania.

Defendants do not actually set out their own argument, but instead attach a motion to dismiss filed by other counsel in another case – United States v. Tucker, case number 16-CR-91, now pending in the Southern District of New York – and "incorporate [the Tucker memorandum] by reference herein." Mot. Dismiss ¶ 4, ECF No. 65.

The Tucker memorandum is not particularly clear, to say the least, but it appears to argue that, as a matter of law, loans made online by tribal entities are subject to tribal law, not state laws – and thus cannot violate state usury laws. In response, in this case, the Government contends that: (1) tribal entities cannot evade state usury laws and (2) at any rate, Defendant's argument does not even apply to the facts alleged in the indictment.

The Government is correct. First, as to the legal argument, Defendants have identified no applicable law or precedent allowing Indian tribes to disregard state laws when making loans to borrowers who are not located on reservations. And, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." Mescalero Apache Tribe v.

2

Jones, 411 U.S. 145, 148-49 (1973). Because the loans at issue involve activity that takes place, at least in part, off a reservation, state law still applies. See Otoe-Missouria Tribe of Indians v. N.Y. State Dept. of Fin. Servs., 974 F. Supp. 2d 353, 359-61 (S.D.N.Y. 2013) (denying Indian tribes' request to enjoin New York's efforts to prevent the tribes from extending payday loans to New York citizens over the Internet, because "the activity the State seeks to regulate is occurring off of Plaintiffs' Tribal lands"), aff'd, 769 F.3d 105, 115 (2d Cir. 2014) (affirming the district court's denial of a preliminary injunction because the tribes "provided insufficient evidence to establish that they are likely to succeed in showing that the internet loans should be treated as on-reservation activity"); Gingras v. Rosette, No. 15-101, 2016 WL 2932163, at *6 (D. Vt. May 18, 2016) (denying a motion to dismiss a civil RICO action against a payday lender claiming affiliation to an Indian tribe, because "the relevant conduct occurred outside of Indian lands").

Second, even if Indian tribes could evade state usury laws by making loans from their reservations, Hallinan and Neff do not claim that they are Indian tribes, or members of Indian tribes, and thus are not entitled to receive tribal sovereign immunity. Indeed, the Tucker memorandum leans heavily on a case that - in a part ignored by the memorandum - makes this factual distinction clear:

> Of course, this broad [tribal sovereign immunity] is not unlimited. It does not cover any other legal persons other than the two tribal entities and their officers while acting within the scope of tribal business. If Tucker's grand scheme was to insulate himself from state scrutiny by associating with these tribes, it was not a very good scheme because he and all his non-tribal officer associates remain subject to investigation. The State can subpoena Messrs. Tucker, Fontano, Hallinan and any other non-tribal officer or non-tribal entity to its heart's content, and thus can freely investigate whether Tucker and his associates were and still are the true lenders in this case. But it cannot subpoena these two tribal entities just because it claims the payday loan businesses are really being operated by Tucker, any more than it could subpoena France if it thought Tucker was the real owner and operator of France.

Colorado v. Cash Advance, No. 05-1143, slip op. at 22 (Colo. Dist. Ct. Feb. 18, 2012). In other words, simply affiliating with an Indian tribe did not give Hallinan and Neff the benefits of tribal immunity, whatever those benefits may or may not be in this situation.

3

**AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

---

      Here, the Court is obligated to accept as true the indictment's allegations that Hallinan and Neff set up sham arrangements in order to evade state usury laws. Defendants have presented no authority demonstrating that such behavior is legal. Accordingly, the Court will deny the motion to dismiss.