**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Criminal No. 16-130** |
| **CHARLES HALLINAN** | : | |
| **WHEELER NEFF** | | |

<u>**GOVERNMENT'S REVISED FORFEITURE TRIAL MEMORANDUM**</u>

The Government respectfully submits this Forfeiture Trial Memorandum to assist the Court should the defendants choose to retain the jury for a forfeiture trial following a conviction on Count One.

**I.      INTRODUCTION**

The superseding indictment filed on December 1, 2016 put the defendants on notice that the Government is seeking forfeiture in its three forms: directly forfeitable specific assets, a money judgment, and substitute assets. The defendants can choose to have the forfeitability of the specific assets be decided by the jury, however a money judgment and substitute assets are determined by this Court.

**II.      FORFEITURE PROCEDURE**

The procedure for forfeiture is governed by Federal Rule of Criminal Procedure 32.2. and 21 U.S.C. § 853 which was made applicable to all criminal forfeiture by 28 U.S.C. 2461(c). Fed. R. Crim. P. 32.2; 21 U.S.C. §853; 28 U.S.C. § 2461(c)*;* <u>United States v. Davenport</u>, 668 F.3d 1316, 1320-21 (11th Cir. 2012); <u>United States v. Liquidators of European Federal Credit Bank</u>, 630 F.3d 1139, 1144-46 (9th Circuit 2011).

### A.     Election of Jury

Rule 32.2(b)(5)(A) provides as follows: "In any case tried before a jury, if the indictment or information states that the Government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of <u>specific property</u> if it returns a guilty verdict."  Fed. R. Crim. P. 32.2(b)(5)(A)(emphasis added). Accordingly, either party has the right to request that the jury be retained to determine if the Government has established the forfeitability of the specific property that it is seeking to forfeit in a criminal case.  The Rule leaves it to the discretion of the Court to determine precisely when the request is made, except that it must be "before the jury begins deliberating."

No formal colloquy or waiver of rights is necessary in connection with this election.  The Court simply must determine prior to the beginning of any jury deliberations, whether either party requests that the jury be retained after the verdicts to determine the forfeitability of specific property.  The right to have the jury make this determination is based on statute and not on any Sixth Amendment or other constitutional right. "'[T]he right to a jury determination of forfeitability is merely statutory in origin.'"  <u>United States v. Sigillito</u>, 759 F.3d 913, 935 (8th Cir. 2014), <u>quoting</u> <u>Libretti v. United States</u>, 516 U.S. 29, 49 (1995).  The Court should simply determine the defendants' choice as to whether they want the jury or the Court to determine the forfeitability issues.

This limited right to have the jury determine forfeiture applies only to specific assets that the Government alleges are forfeitable upon the conviction of Count One. There is no right to have the jury determine the amount of a money judgment that the defendant will be ordered to pay. Rule 32.2 specifically provides that this Court must determine the amount of any money

judgment.  See Fed.R.Crim.P. 32.2(b)(1)(A).  See also United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005) (defendant's right under Rule 32.2(b) is to have the jury determine if the Government has established the required nexus between the property and his crime; the rule does not give the defendant the right to have the jury determine the amount of a money judgment); United States v. Gregoire, 638 F.3d 962, 972 (8th Cir. 2011) (following Tedder).  Accord United States v. Ponzo, 2014 WL 3893790, *2 (D. Mass. 2014) (court submits the forfeiture of specific assets to the jury, at defendant's request, but overrules defendant's objection that the amount of money judgment should have been determined by the jury as well).

**B.      Bifurcation**

Under Federal Rule of Criminal Procedure 32.2(b)(1), the forfeiture phase of the case is bifurcated from the criminal trial.  The Court or jury does not consider forfeiture until after the jury returns a guilty verdict.  The parties then present evidence and/or argument concerning the forfeitability of property based on the relevant count of conviction, here Count One.

**C.      The Burden of Proof**

It is the Government's burden to establish the forfeitability of the property. In the Third Circuit, for RICO forfeiture, the Government must prove the relationship between the property interest to be forfeited and the RICO violation beyond a reasonable doubt.  United States v. Pelullo, 14 F.3d 881 (3d Cir. 1994); see also United States. v. Voigt, 89 F.3d 1050 (3d Cir. 1996) (reaffirming reasonable doubt standard for RICO forfeiture because scope of forfeiture is greater under RICO than for other offenses).

**D.      The Evidence to be Considered**

Following a trial, the Government may rely on the evidence already in the record for the determination of forfeiture. Fed. R. Crim. P. 32.2(b)(1)(B); United States v. Sabhani, 599 F.3d

215, 262-63 (2d Cir. 2010); United States v. Capoccia, 503 F.3d 103, 109 (2d Cir. 2007). The

parties may offer additional evidence as well. Fed. R. Crim. P. 32.2(b)(1)(B). United States v.

Farka*s*, 474 Fed. Appx. 349, 359-60 (4th Cir. 2012) (not precedential) (pursuant to Rule

32.2(b)(1)(B), the court may rely on the trial record or additional evidence offered at the

forfeiture hearing). However, evidence that relates only to whether the defendant was guilty of

the underlying offense is not admissible because the forfeiture hearing is limited to determining

if the Government has established the required nexus between the property and the offenses of

conviction. United States v. Warshak, 631 F.3d 266, 331 (6th Cir. 2010). The defendant cannot

use the forfeiture hearing to relitigate his conviction. Id.

Because forfeiture is part of the sentencing process, traditional rules of evidence do not

apply, allowing the admissibility of hearsay so long as it is sufficiently reliable.  United States v.

Ali, 619 F.3d 713, 720 (7th Cir 2010); Capoccia, 503 F.3d at 109.  United States v. Poulin, 690 F.

Supp. 2d 415, 421 (E.D. Va. 2010); see also, United States v. Grier, 475 F.3d 556, 571, note 9

(3d Cir. 2007); Fed.R.Evid. 1101(d)(3).[1]

### E.      Role of Jury

The role of the jury in the forfeiture phase of the trial is limited.  The jury is only to

determine "whether the Government has established the requisite nexus between the property

and the offense committed by the defendant."  See Fed.R.Crim.P. 32.2(b)(5)(B).  The jury is not

to determine the amount of property that is subject to forfeiture, nor is it to concern itself with

ownership or any third party interests.  These are issues for the Court to resolve after

forfeitability has been determined. United States v. Segal, 495 F.3d 826, 838-39 (7th Cir. 2007)

(defendant's entire interest in the enterprise is forfeitable under 1963(a)(2); jury should never

---

[1]          The government does not intend to offer any hearsay at the forfeiture proceeding.

have been asked what portion of defendant's interest was tainted, and its finding that only 60 percent was tainted was properly ignored by the court); United States v. Nava, 404 F.3d 1119, 1132 (9th Cir. 2005) (district court properly instructed jury that questions of ownership "were not before them"; therefore, jury's return of special verdict of forfeiture says nothing about the ownership of the property); United States v. Wittig, 2006 WL 13158, *3 (D. Kan. 2006) (court instructs jury that it is not to concern itself with anyone's ownership interest in the property, as the jury's responsibility is solely to determine whether the Government has adequately proven the nexus between the offenses and the property); United States v. Brown, 2007 WL 470445, *5 (M.D. Fla. 2007) (setting out text of instruction telling the jury not to concern itself with the interest of any third party in the property; because the jury is unaware of the ancillary proceeding, it may be hesitant to forfeit property held in a third party's name without such an instruction).

The defendant cannot object to the forfeiture on the ground that the property belongs to a third party because third party interests are resolved with ancillary proceedings. Fed. R. Crim. P. 32.2; 21 U.S.C. § 853; 18 U.S.C. § 1963(c) and (l).  United States v. Cox, 575 F.3d 352, 358 (4th Cir. 2009); United States v. Andrews, 530 F.3d 1232, 1236 (10th Cir. 2008) (when the court determines the forfeitability of the property pursuant to Rule 32.2(b)(1), it may not determine the rights of third parties in the property; the ownership issue is deferred to the ancillary proceeding); United States v. Lazarenko, 476 F.3d 642, 648 (9th Cir. 2007) (same); United States v. Rivers, 60 F. Supp.3d 1262 (M.D. Fla. 2014) ("any objection [the defendant] may have on the basis that a third party holds an interest in forfeitable property is not his objection to make"). United States v. Nicolo, 597 F. Supp.2d 342, 346 (W.D. N.Y. 2009) (third party interests are determined at the ancillary proceeding); United States v. Evanson, 2008 WL

3107332, *2 n.3 (D. Utah 2008) ("The Court does not determine ownership issues; ownership is determined in the ancillary proceeding").[2]

### III.   SPECIFIC PROPERTY TO BE FORFEITED

The Government is seeking to forfeit the following specific property:

1.   All funds in account number 009419321146 in the name of Hallinan Capital Corp., at Bank of America;

2.   All funds in account number 6236347844 in the name of Hallinan Capital Corp., at Citizens Bank;

3.   All funds in account number 9943232101 in the name of Hallinan Capital Corp., at Vanguard;

4.   All funds in account number 6236347690 in the name of Apex 1 Lead Generators, at Citizens Bank;

5.   All funds in account number 6236347771 in the name of Blue Water Funding Group, LLC, at Citizens Bank;

6.   All funds in account number 6236347879 in the name of Mill Realty Management, LLC, at Citizens Bank;

7.   All funds in account number 88044257268 in the name of Apex 1 Processing, at Vanguard;

8.   All funds in account number 271501789868 in the name of Apex 1 Processing, Inc., d/b/a Cash Advance Network, at Power Pay, EVO Payments International;

9.   All funds in account number 271501796475 in the name of Apex 1 Processing, Inc., d/b/a Instant Cash USA, at Power Pay, EVO Payments International;

---

[2]   Any appreciation in the value of forfeitable property is also forfeitable. United States v. Betancourt, 422 F.3d 240, 251 (5th Cir. 2005) (lottery winnings forfeitable because winning lottery ticket was purchased with drug proceeds); United States v. Hill, 46 Fed. Appx. 838, 830 (6th Cir. 2002) (not precedential) (stock that appreciates in value is forfeitable as property traceable to the originally forfeitable shares); United States v. Hawkey, 148 F.3d 920, 928 (8th Cir. 1998) (property is forfeitable in full, including any appreciation in value since the time the property became subject to forfeiture, without regard to the reasons for the appreciation); United States v. Wahlen, 459 F.Supp.2d 800,814 (E.D. Wis. 2006) (tainted portions of property acquired with criminal proceeds were subject to forfeitable with appreciation).

10.   All funds in account number 271501796327 in the name of Apex 1 Processing, Inc., d/b/a Paycheck Today, at Power Pay, EVO Payments International;

11.   All funds in account number 271501796590 in the name of Fifth Avenue Financial, Inc., d/b/a My Next Paycheck, at Power Pay, EVO Payments International;

12.   All funds in account number 271501796665 in the name of Palmetto Financial, Inc., d/b/a My Payday Advance, at Power Pay, EVO Payments International;

13.   All funds in account number 271501796707 in the name of Sabal Financial, Inc., d/b/a Your Fast Payday, at Power Pay, EVO Payments International;

14.   Funds in the amount of $92,587.23 in account number 623021206, in the name of Charles Hallinan, at Morgan Stanley;

15.   Funds in the amount of $58,461.62 in account number 009466692476, in the name of Charles Hallinan, at Bank of America;

16.   Funds in the amount of $20,665.75 in account number 009001408711, in the name of Charles Hallinan, at Bank of America;

17.   Funds in the amount of $100,930.00 in account number 7101622806, in the name of Charles M. Hallinan, at Bank of Leumi;

18.   Funds in the amount of $211,648.93 in account number 4300263160, in the name of Charles Hallinan, at TD Bank;

19.   One (1) 2014 Bentley Flying Spur bearing Vehicle Identification Number SCBEC9ZA7EC092360;

20.   One (1) 2015 Mercedes Benz S550 bearing Vehicle Identification Number WDDUG8FB5FA123337;

21.   One (1) 2015 Mercedes Benz S550V4, bearing Vehicle Identification Number WDDUG8FB3FA123322;

22.   Real property located at 400 S.E. 5th Avenue, Apt. 304N, Boca Raton, Florida, with all improvements, appurtenances, and attachments thereon.

23.     Real property located at 118 School Road, Wilmington, Delaware, with all improvements, appurtenances, and attachments thereon.

All of this property was specifically noticed in the Notice of Forfeiture No. 1 of the Superseding Indictment or in a bill of particular. Property #1-22 relate to defendant Charles M. Hallinan, only. Property #23 relates to defendant William K. Neff only.

Following the return of the Superseding Indictment by the grand jury, the Government sought to restrain the account funds in Property #1-20, and on April 6, 2016, this Court ordered the restraint of Property #1-20.

## IV.     RICO FORFEITURE

The RICO forfeiture statute, 18 U.S.C. §1963(a)(1)-(3), is mandatory and broad in its scope. <u>Alexander v. United States</u>, 509 U.S. 544, 562 (1993); It has three distinct sections and provides that:

> Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provisions of State law –
>
> (1) any interest the person has acquired or maintained in violation of section 1962;
>
> (2) any –
>
> > (A) interest in;
> >
> > (B) security of;
> >
> > (C) claim against; or
> >
> > (D) property or contractual right of any kind affording a source of influence over;
>
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person
obtained, directly or indirectly, from racketeering activity or unlawful debt
collection in violation of 1962.

The court, in imposing sentence on such person shall order, in addition to any other
sentence imposed pursuant to this section, that the person forfeit to the United States all
property described in this subsection. . . .

Together, these sections authorize forfeiture in a variety of ways as part of the sentence of

a convicted defendant.[3] As described in greater detail below, the Government is seeking

forfeiture of Property #1-22, all of the account funds and the vehicles, under section

1963(a)(2)(A); it is seeking forfeiture of Property #22-23, the two pieces of real property, under

section 1963(a)(2)(D). [4]

## IV.     GOVERNMENT'S FORFEITURE CASE

### A.     Enterprise Property #1-22, Account Funds and Vehicles (Charles M. Hallinan)

Pursuant to section 1963(a)(2)(A), "any interest in . . .any enterprise which the person has

established, operated, controlled, conducted, or participated in the conduct of, in violated of

section 1962" is forfeitable. The plain language of this subsection makes clear that when a

defendant has established or controlled the affairs of a RICO enterprise, the defendant's entire

---

[3]      Both restitution and forfeiture are part of sentencing and both are mandatory, however,
one cannot offset the other. United States v. Sanjar, 853 F.3d 190 (5th Cir. 2017); United States v.
Bodouva, 853 F.3d 76, 78-79 (2d Cir. 2017); United States v. Rivera, et al., 686 Fed. Appx. (9th
Cir. 2017); Blackman, 746 F.3d 137, 143 (4th Cir. 2014); United States v. Torres, 703 F.3d 194,
204 (2d Cir. 2012).
[4]      Section 1963(b) states that "property subject to criminal forfeiture under this section
includes—(1) real property, including things growing on, affixed to, and found in; and (2)
tangible and intangible personal property, including rights, privileges, interests, claims, and
securities. Further, the word "interest" is a general term which denotes a right, claim, title, or
legal share in something. Russello v. United States, 464 U.S. 16, 21 (1983)(the broad term
"interest" reflects Congress's intent to not be limited by other technical definitions and reflects
RICO's concept of breadth).

interest in the  enterprise is forfeitable without regard to whether the interest was related to the criminal activity. See United States v. Sarbello, 985 F.2d 76, 724 & n. 13 (3d Cir. 1993)(100% of the defendant's interest in the enterprise is forfeitable without regard to whether the interests were acquired legitimately); see also United States v. Segal, 495 F.3d 826, 838-39 (7th Cir. 2007)(same); United States v. Angiulo, 897 F.3d 1169, 1211 (1st Cir. 1990)(same); United States v. Busher, 817 F.2d 1409, 1413 (9th Cir. 1987)(same); United States v. Anderson, 782 F.2d 908, 918 (11th Cir. 1986) (same). [5]

The trial evidence overwhelming proved that defendant Charles M. Hallinan established, operated, and controlled the PayDay Lending Organization with all its component entities. Indeed, the defendants did not contest this, rather they argued that it was not an illegal enterprise. The trial evidence also showed that in addition to establishing and operating the enterprise, defendant Hallinan maintained a 100% interest in the enterprise, and its component entities, as demonstrated by the numerous Government and tax filings, and witness testimony.

Under these circumstances, should defendant Hallinan be convicted of RICO conspiracy as charged in Count One, defendant Hallinan's entire interest in the RICO enterprise is forfeitable to the United States under section 1963(a)(2)(A). The Government will demonstrate that the specific property listed as Property #1-22  -- the account funds and vehicles -- are each

---

[5]      Forfeiture under sections 1963(a)(1) and (a)(3) does require that the property subject to forfeiture have been acquired or derived from the RICO violation. United States v. Faulkner, 17 F.3d 745, 775 (5th Cir. 1994) (forfeiture order pursuant to section 1963(a)(1) represented the amount "acquired or maintained" as a result of the RICO violation); Angiulo, 897 F.3d at 1213 (under section 1963(a)(1) forfeiture is limited to property that would not have been acquired "but for" for the RICO activity);United States v. West, 877 F.2d 281, 292 (4th Cir 1989) (automobile used as collateral for drug purchases was forfeitable under section 1963(a)(1) because it was "maintained" in violation of a RICO offense); United States v. Edwards, 303 F.3d 606, 643-44 (5th Cir. 2002) (under section 1963(a)(3), forfeiture order based on proceeds of RICO offense was proper); United States v. DeFries, 129 F.3d 1293, 1314-15 &n. 16(D.C. Cir. 1997) (RICO forfeiture under section 1963(a)(1) included salaries earned through RICO activity).

property of the enterprise, and therefore, defendant Hallinan's interest in each property is forfeitable.

The majority of the account funds subject to forfeiture are held in enterprise bank accounts, as demonstrated by the trial evidence. As enterprise property, the defendant's interest in that property is forfeitable. Property can become property of an enterprise even after the RICO conspiracy has ended, and as such, is forfeitable.  United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Pacific Bank), 956 F. Supp. 5, 12 (D.D.C. 1997) (even untainted property received by the enterprise after the racketeering activity had ceased is subject to forfeiture under subsection (a)(2)(A) because "all of a RICO defendant's interests in an enterprise, including the enterprise itself, are subject to forfeiture in their entirety, regardless of whether some portion of the enterprise is untainted by racketeering activity"); United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Banque Indosuez), 961 F. Supp. 282, 286 (D.D.C. 1997) (claimant cannot assert fact that wire transfer was received by defendant after criminal activity ceased as ground for challenging order of forfeiture).  Accordingly, the defendant's interest in the funds in the enterprise accounts is forfeitable regardless of whether the funds were deposited before, during, or after the time of the RICO conspiracy.

The defendant also transferred enterprise property, in the form of funds, to himself into his personal bank accounts, and several of the account funds subject to forfeiture are held in five personal bank accounts belonging to defendant Hallinan. The Government has traced the movement of enterprise funds into those personal accounts and is prepared to show this tracing.

The defendant likewise transferred enterprise property, in the form of funds, for the purchase of a Bentley which he titled in his wife's name. Two other vehicles, all luxury Mercedes Benz, were also purchased with enterprise property, in the form of funds, however,

those funds were first transferred to defendant Hallinan's personal bank accounts and then transferred again to purchase the vehicles. The Government is prepared to show the flow of this enterprise property to these Hallinan personal accounts and ultimately to the Mercedes Benz.

The transfer of the enterprise property for defendant Hallinan's personal use, or the personal use of others, does not negate forfeiture. The Government's interest in forfeitable property under section 1963(a)(2) vests at the time of the criminal activity and cannot be defeated by a transfer of the property. Title 18 U.S.C. §1963(c) provides that "all right, title, and interest in property described in subsection (a) vests in the United States upon commission of the act giving rise to forfeiture under this section. . . . ." Angiulo, 897 F.2d at 1210 (under section 1963(a)(2), "the Government's interest in the forfeitable property vests at the time of the unlawful activity and cannot be defeated by the defendants' subsequent transfer of the property). United States v. Ginsburg, 773 F.2d 798, 801 (7th Cir.1985); United States v. Navarro–Ordas, 770 F.2d 959, 969–70 (11th Cir.1985).  Accordingly, it is only necessary for the Government to show that a given property was an asset of the enterprise before it was transferred to someone else.  Whether a third party may have acquired an interest in the property is a matter for the Court to determine, not the jury.

To determine if a property in the possession of one of the defendants or of a third party is traceable to an asset of the enterprise, the Government may apply certain accounting principles. United States v. Stewart, 185 F.3d 112, 130 (3d Cir. 1999) (if $3 million in laundered funds is traced to an account and stays there, that amount is directly forfeitable even though the account contains clean funds); United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986) (to establish that tainted funds remain in a bank account, notwithstanding a fluctuating balance, the Government may use a "last out" rule); United States v. Prevezon Holdings, Ltd.,

12

2015 WL 4719786, *7-9 (S.D.N.Y. Aug. 7, 2015) (assuming the Government has to trace the

defendant property, it did so by relying on the accounting principles in Banco Cafetero); United

States v. One Parcel of Real Property...170 Westfield Dr., 34 F. Supp. 2d 107, 116-17 (D.R.I.

1999) (under Banco Cafetero, money in a commingled account is traceable if the balance never

fell below the amount deposited ["last out" rule]; assets purchased with commingled funds are

traceable up to the amount deposited ["first out" rule]); United States v. Capoccia, 2009 WL

2601426, *11 (D. Vt. Aug. 19, 2009) (explaining "lowest intermediate balance rule" and how it

allows Government to trace proceeds through commingled accounts); United States v.

Haleamau, 2012 WL 3394952 (D. Hawaii Aug. 1, 2012) (same); United States v. Lindell, 2016

WL 4707976, *5 (D. Haw. Sept. 8, 2016) (noting that the use of the LIBR is favored in light of

Luis v. United States; following Haleamau).  Cf. Luis v. United States, 578 U.S. ___, 136 S. Ct.

1083, 1095 (Mar. 30, 2016) (approving the use of accounting principles to trace directly-

forfeitable assets in a criminal forfeiture case in the context of pre-trial restraining orders).  But

see United States v. Voigt, 89 F.3d 1050, 1088 (3d Cir. 1996) (Government could not satisfy its

tracing burden where criminal proceeds were commingled with legitimate funds in a bank

account and the allegedly traceable property was not purchased until there had been

"numerous intervening deposits and withdrawals;" its remedy is to obtain a money judgment and

forfeit substitute assets).

For example, if the balance in a bank account containing commingled funds, meaning

funds from an asset of the enterprise and funds from another source, never fell below the value of

the traced enterprise funds, the traced enterprise funds which remained in the account at all times

is forfeitable.  Alternatively, property purchased at the time that traced enterprise funds are in a

bank account is forfeitable.  United States v. One Parcel of Real Property...170 Westfield Dr., 34

F. Supp. 2d 107, 116-17 (D.R.I. 1999) (holding that the Government may elect which accounting rule to apply depending on the circumstances).

In this case, these accounting principles will show that the transferred funds restrained on April 6, 2016, are traceable to the enterprise account funds and are therefore forfeitable.

**B.      Property #22-23, Real Property (Charles M. Hallinan and Wheeler K. Neff)**

Pursuant to section 1963 (a)(2)(D) any "property . . . of any kind affording a source of influence over any enterprise which a person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962" is forfeitable.

Property affords a source of influence over a RICO enterprise when it furthers the affairs of the enterprise, when the defendant uses the property to conduct the affairs of the enterprise or when the defendant uses the property *to facilitate* his conduct of the affairs of the enterprise.

Property affords a source of influence over a RICO enterprise when it furthers the affairs of the enterprise, when the defendant uses the property to conduct the affairs of the enterprise or when the defendant uses the property *to facilitate* his conduct of the affairs of the enterprise. *Angiulo,* 897 F.2d 1169, 1211, 1214-1215 (1st Cir.1990) (defendant's interest in a café was subject to forfeiture where defendant held meetings at café to discuss racketeering activities; seized cash could be forfeited as affording a source of influence); United States v. West, 877 F.2d 281, 292 (4th Cir. 1989) (real property where defendant stored and sold drugs and vehicle used as collateral to secure debts incurred in purchasing drugs forfeited as property affording a source of influence); United States v. Bangiyev, 141 F. Supp.3d 589 (E.D. Va. 2015) (real property and business used to facilitate the RICO conspiracy, and all of the business's assets, subject to forfeiture under § 1963(a)(2) as property affording a source of influence over the enterprise); United States v. Rudaj, 2006 WL 1876664, *3-4 (S.D.N.Y. July 5, 2006) (real

property where defendants met to conduct the racketeering activity is forfeitable under § 1963(a)(2)(D) as property affording a source of influence over the RICO enterprise).

Facilitation occurs when the use of the property makes the operation of the RICO enterprise "less difficult or more or less free from obstruction or hindrance." United States v. Huber, 404 F.3d 1047, 1060 (8th Cir. 2005) (facilitating property is anything that "makes the prohibited conduct less difficult or more or less free from hindrance"); United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003) ("[f]acilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance"); United States v. Rivera, 884 F.2d 544, 546 (11th Cir. 1989) (defining facilitating property broadly); United States v. Seher, 574 F. Supp.2d 1368, 1370 (N.D. Ga. 2008) (following Puche; "To facilitate the offense, the property need only make the prohibited conduct less difficult or more or less free from obstruction or hindrance. Thus, there is no requirement that the property's role in the crime be integral, essential, or indispensable."); United States v. Schlesinger, 396 F. Supp. 2d 267, 271 (E.D.N.Y. 2005) ("facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance") (quoting United States v. Wyly, 193 F.3d 289, 302 (5th Cir. 1999)).

Property affording a defendant a source of influence therefore could include real property, a vehicle, a business, or simply a sum of money that the defendant used to conduct the enterprise, or that made his conduct of the enterprise less difficult.

Here, the 5th Avenue property in Boca Raton, Florida ("5th Avenue Property") was used by defendant Hallinan to legally form several of the component entities of the RICO enterprise. This address served as the registered principal place of business, and mailing address, for Apex 1 Processing, and Mill Realty Management.  The 5th Avenue Property also served as the business

address for six enterprise component entities for purposes of tax filings, including for Hallinan Capital Corp. Apex 1 Processing, and Apex 1 Lead Generators, among others. In order to conduct the business activities of the RICO enterprise, it was essential to be able to incorporate the different component entities which necessarily required a registered place of business. Further, the component entities were obligated to file tax returns which also required a place of business. The use of the 5th Avenue Property by the RICO enterprise was instrumental to its functioning and undoubtedly facilitated the business, and "furthered its affairs," thereby rendering it forfeitable.

The School Road property in Wilmington, Delaware (the "School Road Property") also facilitated and "furthered the affairs" of the RICO enterprise. Defendant Neff served as the registered agent of the component entities of the enterprise to include Palmetto Financial, Sabal Financial, Fifth Avenue Financial, and Blue Water Funding. As the registered agent, defendant Neff listed the School Road Property as the address for the registered agent. These legal filings were essential to the formation of these companies as well as their functioning.

Defendant Neff also served as the long-time attorney to the RICO enterprise, providing advice and counsel, and even participating in fraud to evade the Indiana lawsuit. While serving in this capacity, defendant Neff worked from the School Road Property, which was his place of business, as he himself stated during his testimony. From there, he conducted his law office as shown again and again in his correspondence and emails on behalf of the RICO enterprise. Because defendant Neff participated in the conduct of the RICO enterprise and used the School Road Property to facilitate its business and further its affairs, the property is forfeitable.

## VI.    SUMMARY EXHIBITS

The Government has prepared a summary exhibit chart which identifies the specific property to be forfeited, Property #1-23.

16

As to Property #14-22, the Government has prepared several summary exhibits based on the financial records in evidence to show the movement of enterprise property (as funds). These summary exhibits are spreadsheets, and flow charts, which show the transfer of money from enterprise bank accounts to Hallinan's personal bank accounts, and to the purchase of the vehicles.[6] To assist the jury in identifying which exhibits underlie the spreadsheets and flow charts, the Government has prepared lists of those exhibits, which are essentially small segments of the trial exhibit list.

In addition, the Government has prepared a list of exhibits which identify the enterprise assets subject to forfeiture, Property #1-13, and a list of the documents which establish defendant Hallinan's interests in the RICO enterprise and its component parts. As to the real property, Property #22-23, the Government compiled a list of the Government and business filings where the 5th Street Property is used as part of the RICO enterprise dealings.  A similar list was compiled for the School Road Property, with defendant's Neff's letter and email correspondence included.  Again, all of these lists are essentially segments of the trial exhibit list and are being offered to assist the jury in identifying the relevant exhibits, among the thousands admitted, which support the forfeiture case.

---

[6]      To the extent additional bank or financial records are needed for these summary exhibits, defense counsel has agreed to their admission through a stipulation being prepared by the Government.

## VII.    JURY INSTRUCTIONS AND SPECIAL VERDICT SHEET

Jury instructions for forfeiture and a special verdict sheet have been provided to the Court under separate cover.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

*/s/ Sarah L. Grieb*
SARAH L.GRIEB
Assistant United States Attorney
Chief, Asset Recovery

*/s/ Maria M. Carrillo*
MARIA M. CARRILLO
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Government's Revised Forfeiture Trial Memorandum was

filed and was served by ECF filing, and hand-delivery, on:

Edward Jacobs, Esquire
Counsel for Charles Hallinan

Dennis Cogan, Esquire
Counsel for Wheeler Neff

Christopher Warren, Esquire
Counsel for Wheeler Neff

*/s/ Maria M. Carrillo*
MARIA M. CARRILLO
Assistant United States Attorney

Date:  November 20, 2017

19