# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

          v.          :          CRIMINAL NO. 16-130-1

CHARLES M. HALLINAN          :

## GOVERNMENT'S MOTION TO PRECLUDE DISCLOSURE OF WORK-PRODUCT

The United States of America, by and through its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Maria M. Carrillo, Mark B. Dubnoff, and James A. Petkun, Assistant United States Attorneys for the District, moves to preclude the disclosure of government materials as irrelevant and work product, and in support, submits the following.

## I.   THE FORFEITURE HEARING ON 4/6/18 AND THIS COURT'S ORDER FOR PRODUCTION OF MATERIALS

On April 6, 2018, a forfeiture hearing was held before this Court. Government witness Joseph Piccione, a Litigation Financial Analyst at the United States Attorney's Office, testified at the hearing as to his financial analyses pertaining to Properties #14 to #21. During cross-examination, defense counsel requested the production of materials which Mr. Piccione referenced during his testimony. This Court granted the request as to two categories of materials, subject to privilege assertions and relevancy determinations:[1] (1) A list of what Mr. Piccione was told by the government prosecutors were enterprise entities, Tr. 4/6/18 at 118; and (2) spreadsheets of the enterprise proceeds or funds "put into" the "HCC" (Hallinan Capital Corp.)

---

[1] Citations are to the transcript of the forfeiture hearing.

accounts referenced in paragraph 9 of Mr. Piccione's affidavit ("HCC Accounts")[2]. The Piccione

affidavit is government's exhibit #2500. Tr. 4/6/18 at 110-116, 118.

Following the Court's order, the government prosecutors spoke to Mr. Piccione who

explained that the list of enterprise entities upon which he relied was the enterprise entities

identified in the superseding indictment, and before that, the indictment, the restraining order, the

affidavit, and perhaps a draft. The government informed counsel of this on Monday, April 9,

2018, during a telephone conference in which the prosecutors also stated that the government

would be filing this motion to preclude the production of the spreadsheets based on a relevancy

objection and work-product protection.

## II.   THE SPREADSHEETS ARE NOT RELEVANT TO THE GOVERNMENT'S FORFEITURE THEORY FOR THE SPECIFIC PROPERTIES OR THE MONEY JUDGMENT

The spreadsheets ordered to be turned over are draft analyses of enterprise proceeds and

funds which flow into the HCC Accounts.  As set out in great detail in the government's Motion

for Preliminary Order of Forfeiture ("POF Motion") (and its Reply Brief to the defendant's

response to the POF Motion), it is seeking a money judgment of over $490 million for the

amount of enterprise proceeds pursuant to section 1963(a)(3). As Mr. Piccione testified, the

movement of enterprise proceeds made the tracing of these proceeds extraordinarily difficult,

and accordingly, the government is seeking the forfeiture of substitute assets in order to satisfy

the money judgment.

The government is also seeking forfeiture of enterprise property under a different prong,

and theory, of RICO forfeiture, section 1963(a)(2). This enterprise property includes Properties

---

[2]       There are many HCC bank accounts which were part of the main case and also the forfeiture hearing. However, for this motion, the government is referring to the specific accounts at issue here as the "HCC Accounts."

2

#1-#13 which were funds in enterprise bank accounts that were discovered and restrained. The forfeitable enterprise property also includes enterprise property or funds which were traced to their destination in personal property or accounts, and restrained. These are Properties #14-#21. These Properties are not proceeds as the term is used in section 1963(a)(3). Although tracing is used to follow enterprise property (which are funds), that does not mean the enterprise property is enterprise proceeds.

The government's POF Motion (and its Reply Brief) clearly explains why such Properties are forfeitable under section 1963(a)(2). POF Motion at 15-26. Section 1963(a)(2) renders any interest of the defendant in the enterprise forfeitable to the government.  The funds within an enterprise account are property of the enterprise, and the defendant's interest in these funds is accordingly forfeitable. The government has submitted evidence that the defendant was the 100% owner of nearly all of the enterprise entities, and as such, his interest is forfeitable to the government.[3]

 Properties #1-#13 are all enterprise property or funds within enterprise accounts and the government's position is that they are all forfeitable under this section of RICO forfeiture. When these funds are moved from the enterprise accounts,  they remain enterprise property, and if they are traced to their destination, the government can forfeit them. Properties #14-#21 are all property which was traced from enterprise accounts and are all forfeitable under section 1963(a)(2).  *See* POF Motion at 15-26.

Under this theory, the source of the enterprise account funds is irrelevant; once they are in an enterprise account, they are enterprise property. For this reason, the inflow to the HCC

---

[3]     The government will ask the Court to make findings as to the component parts of the Hallinan Payday Lending Enterprise ("HPDLE").

Accounts is not relevant, but the outflow is. Simply because Mr. Piccione was tasked to analyze the inflow at one time, does not render this analysis relevant to his testimony. The government has not offered into evidence, nor does it rely on, any analyses of the inflow to the HCC Accounts for forfeiture of the specific properties or as a basis for the money judgment.[4]

Fed. R. Evid. 401 defines relevant evidence as evidence that "tends to make a fact of consequence more probable or less probable," and Fed. R. Evid. 402 provides that "[e]vidence which is not relevant is not admissible." For the reasons described above, the draft spreadsheets, and the information they contain, are simply not relevant, not admissible, and therefore need not be turned over.

## III. THE MATERIALS ARE PROTECTED BY THE WORK-PRODUCT DOCTRINE AND THE DEFENDANT CANNOT SHOW A SUBSTANTIAL NEED FOR THEM

It has long been recognized that a qualified privilege exists for certain materials prepared by an attorney who is acting in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). The privilege, referred to as the work-product doctrine, prevents intrusion into the "proper preparation" of a case that necessarily requires that an attorney "assemble information, sift what he considers to be relevant from the irrelevant facts; prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 512. Although most often asserted in civil litigation, the doctrine serves to assure the proper functioning of the criminal justice system as well by encouraging "thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  It also promotes the adversary system by protecting the confidentiality of papers prepared by or on behalf of an attorney and by allowing attorneys to

---

[4]     The defendant is free to argue that the absence of this evidence affects the government's ability to prevail, however, the government's position is that this evidence is not necessary for any of its theories.

prepare cases without fear that the information could be used against their clients. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991), citing *Hickman v. Taylor*, 329 U.S. at 510-511.  The doctrine extends to agents of the attorney, and it likewise protects material prepared by those agents. *Id.*

Rule 16 of the Federal Rules of Criminal Procedure includes provisions codifying the work-product protection for pretrial discovery in criminal proceedings. The rule provides in pertinent part that as to the government, "this rule does not authorize the discovery or inspection of reports, memoranda or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case . . . ." Fed. R. Crim. P. 16(a)(2).  The protection extends to the trial stage of the litigation process, as well as the pretrial stages. *Nobles,* 422 U.S. at 239.

The party asserting the protection must show that the materials at issue were prepared in anticipation of litigation. Once a *prima facie* showing is made that the materials are work-product, the burden of proof shifts to the party seeking disclosure. *Appeal of Hughes*, 633 F.2d 282 (3d Cir. 1980); *Kent Corp. v. NLRB,* 530 F.2d 612, 623-24 (5th Cir.), *cert. denied,* 429 U.S. 920 (1976); *In re Natta,* 410 F.2d 187, 193 (3d Cir.), *cert. denied,* 396 U.S. 836 (1969); *Republic Gear Co., v. Borg-Warner Corp.,* 381 F.2d 551, 558 (2d Cir. 1967). To justify the production of such material, a party seeking its disclosure must show a substantial need for the information. *Hickman*, 329 U.S. at 508-09.

Here, the spreadsheets requested were prepared in anticipation of litigation. Mr. Piccione is a Litigation Financial Analyst who assists the U.S. Attorney's Office in forfeiture matters related to the prosecution of cases. Gov. Exh. #2500, paragraph 1-6. His work on this case was the analysis of the financial accounts related to Charles Hallinan and his Payday Lending

business which included tracing of proceeds and other funds into and out of the enterprise accounts to their ultimate destination to assist the government in its pursuit of forfeiture. 4/6/18 Tr. at 55-56. Since the time of the restraining order which closely followed the indictment, forfeiture has been a part of this prosecution.

The spreadsheets ordered to be disclosed are draft spreadsheets, and consist of Mr. Piccione's analyses of deposits into the HCC Accounts. Gov. Exh. #2500. Because these spreadsheets were prepared as part of his work on the forfeiture investigation, there is no doubt that they were created in anticipation of litigation and are protected work-product.

The defendant must now show that he has a substantial need for the materials. *Hickman*, 329 U.S. at 511 ("[W]here production of facts is essential to the preparation of [the] case, discovery may be properly had."); *Kent,* 530 F.2d at 623-24 (when the claim of work-product is *prima facie* valid, the burden shifts to the party seeking discovery to show substantial need and an inability to obtain the material by other means); *Natta,* 410 at 193 (burden of demonstrating good cause is on the proponent of disclosure); *Republic Gear,* 381 F.2d at 558 (discovery denied where materials were merely helpful not essential to the adverse party in the thorough preparation of the case). *See also, Appeal of Hughes*, 633 F.2d 282, 288 (3d Cir. 1980) ("need" is construed strictly by the courts, and it never sufficient to merely show that the material sought is relevant).

Here, the defendant cannot show substantial need for these materials because they are irrelevant to Mr. Piccione's testimony as described above, because they are draft documents, and because the defendant has had access for at least two years to the bank records upon which

the draft spreadsheets are based, and could have conducted his own analyses of these records.[5] In addition, the defendant has known for almost six months about the government's forfeiture theory for all of the specific properties, including Properties #14 and #15, which are the subject of the analyses in paragraphs 8-16 of the Piccione affidavit. During the many months following notice of the government's forfeiture theory, he could have analyzed the deposits into the HCC Accounts reflected in the draft spreadsheets he now seeks.

Where alternative means exist at getting the work-product information sought, substantial need is lacking. *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1466-67 (11th Cir. 1984) (district court abused discretion in compelling production where there was no demonstration that the party could not have obtained the information by alternative means).[6] *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 849 (8th Cir. 1975) (allowing disclosure of list of witnesses, but refusing disclosure of attorney's summary of their testimony where the witnesses "were known and accessible to the grand jury")

In addition, the draft spreadsheets are significant work-product in that they were created by an experienced financial analyst over a period of time and cover years of financial transactions for four HCC corporate accounts. *United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir. 1980) (the substantive content of the materials is a factor in determining whether the

---

[5]     The government has not sought protection of the bank statements upon which the spreadsheets are based. Indeed, these were provided in discovery to the defendant years ago, and have been moved into evidence mostly during the main trial, and partly during the forfeiture hearing. The work product doctrine does not protect the discovery of underlying facts. *ECDC Evel. LC v. New York Marine & Gen. Ins. Co.,* 1998 U.S. Dist. LEXIS 8808, at *44 (S.D.N.Y. June 4, 1998).

[6]     Substantial need must be greater if it is opinion evidence. *Upjohn Co. v. United States*, 449 U.S. 383, 400-402 (1981). The materials in question are undoubtedly protected work product, but are not opinion evidence.

doctrine can be overcome). *Appeal of Hughes*, 633 F.2d. at 289 ("the production of a mere list of persons interviewed" requires a comparatively low showing of need). Under the circumstances here, the defendant can show no need for these materials which can overcome the protection of the doctrine.

## IV.     THERE WAS NO WAIVER BY MR. PICCIONE DURING HIS TESTIMONY

The defendant claims that the protection of the doctrine was waived during Mr. Piccione's testimony, and accordingly, the spreadsheets should be produced. No such waiver occurred and the materials remain protected.[7]

The privilege afforded by the work-product doctrine is not absolute and it can be waived by the party to whom it offers protection. *Nobles*, 422 U.S. at 239.  For example, the privilege can be waived by disclosing protected information to an adversary. *Westinghouse Elec. Corp.*, 951 F.2d at 1428. Waiver can also occur when a party makes testimonial use of material that might otherwise be protected. *Nobles*, 422 U.S. at 239.  By presenting an attorney or agent as a witness, a party waives the protection for matters that are covered in that witness' testimony. *Id.* at 239-40.

Mr. Piccione's testimony did not rely on the draft spreadsheets, and therefore, no waiver occurred. He repeatedly testified on cross examination that his determination that Property #14, the Morgan Stanley account #1206, and Property #15, the Bank of America account #2476, contained enterprise property or funds, was based on the direct flow of property or funds from enterprise business accounts, including the HCC Accounts, into Morgan Stanley #1206 and Bank of America #2476. 4/4/18 Tr. at 90 (lines 9-13), 96 (lines 6-25), 97 (all), 98 (lines 1-10), 99

---

[7]     The defendant through counsel made his position known during a telephone conference with the Court on April 10, 2018.

(lines 9-25), 100 (lines 1-8), 107 (lines 8-14).  Further, his affidavit which constituted his direct testimony clearly states this. Gov Exh. #2500 at paragraphs 8-16.

He was asked by counsel on cross-examination, if he looked at the flow of enterprise proceeds into the HCC Accounts, and he answered yes. 4/4/16 Tr. at 100.[8] Subsequently, Mr. Piccione was asked about the flow out of the accounts, and he stated that he had completed that analyses as well. 4/4/18 Tr. 110. Immediately following this exchange, Mr. Jacobs asked Mr. Piccione whether he had used that information to reach "a conclusion that the entire balance was enterprise funds?"  Mr. Piccione replied, "Yes," and Mr. Jacobs then asked for the records to be produced.

This record is confusing and unclear as to what balance and what accounts counsel was referring to during this line of questioning. The questions preceding these questions pertained to the flow of enterprise funds out of the Morgan Stanley #1206 to Bank of America #2476, another personal account (and then were immediately followed by objections and argument by the parties). The record does not establish that Mr. Piccione relied on the draft spreadsheets for his determinations about Morgan Stanley #1206 and Bank of America #2476, and accordingly, there has been no clear waiver.

The *Nobles* case is particularly instructive here. In that case, the defense offered testimony by an investigator with the purpose of undermining the eyewitness identification of government witnesses. *Nobles*, 422 U.S. at 232-233. The investigator was to testify that he conducted interviews of several witnesses as to their eyewitness identification and that he knew based on these interviews that there were discrepancies between the in court identifications and

---

[8]       Given counsel's reliance on Gov. Exh. #500E for this line of questioning, it is clear he was referring to proceeds of the HPDLE.

those made prior to trial. *Id.* As part of his investigation, the investigator documented his findings and conclusions in a report. *Id.* The Court ruled that the investigator's report of his findings and conclusions was "highly relevant to the critical issue of credibility" because the investigator was to contrast his recollection of the interview statements (which were contested) with the testimony by the prosecution's witnesses at trial. *Id.* at 232, 239. Accordingly, it was not protected work-product. *Id.* at 239. *See also, United States v. Purcell*, 667 F.Supp.2d 498 (E.D. Pa. 2009) (In a § 2255 habeas corpus hearing, the government attorneys-witnesses' testimony on the reasons for filing an §851 Information in the criminal prosecution placed their thought processes and litigation strategy at issue, and therefore, disclosure of memoranda and other writings concerning plea discussions or the filing of a §851 Information was required).

The instant situation is far different than the *Nobles* scenario. The record demonstrates that there was confusions as to what counsel was asking, and what Mr. Piccione was answering. Further, from the entire record, it is clear that Mr. Piccione did not rely on the spreadsheets for his determinations in paragraphs 8-16 of his affidavit, and that he did not waive the work-product protection during his testimony.

## V.   THE FLOW OF FUNDS INTO THE HCC ACCOUNTS ARE NOT RELEVANT TO THE FORFEITABILITY OF ANY SPECIFIC PROPERTY OR TO THE MONEY JUDGMENT

The defendant claims that the spreadsheets of the inflow of enterprise proceeds into the HCC Accounts, are central to the forfeiture issues before the Court.[9] This is simply not true. As described above, the draft spreadsheets are irrelevant to the government's theory of the forfeitability of the funds in the Morgan Stanley account #1206 or the Bank of America account

---

[9]   The defendant through counsel made his position known during a telephone conference with the Court on April 10, 2018.

#2476. Further, the extensive briefings filed by both parties demonstrate that the draft spreadsheets, and the information within them, are not relevant to the determination of the money judgment. None of the submissions by either side rely on any analysis of the flow of enterprise proceeds into the HCC Accounts.

## VI.   THIS COURT MAY CONDUCT AN IN CAMERA REVIEW OF THE SPREADSHEETS

The government is prepared to submit the spreadsheets to this Court for an *in camera* review to determine whether they are relevant, work-product, and should be produced.  *See*, *In re Murphy*, 560 F.2d 326, 336 n.20 (8th Cir. 1977); *In re Grand Jury Proceedings (Sutton)*, 658 F.2d 782, 784 (10th Cir. 1981).

## VII.   CONCLUSION

Wherefore, the government respectfully requests that this Court preclude the production of the draft spreadsheets because they are protected work-product and irrelevant to Mr. Piccione's testimony and the government's forfeiture theories.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


*s/Sarah L. Grieb*
SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery


*s/Maria M. Carrillo*
MARIA M. CARRILLO
MARK B. DUBNOFF
Assistant United States Attorneys

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion to Preclude Disclosure of Work-product

was served by electronic filing on:

>   Edward Jacobs, Esquire
>   Michael Rosensaft, Esquire
>   Andrew Stutzman, Esquire
>   Counsel for Charles Hallinan

Date:  April 11, 2018

>   *s/Maria M. Carrillo*
>   MARIA M. CARRILLO
>   Assistant United States Attorney

12