IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 16-130-01 |
| v. | : | |
| | : | |
| CHARLES M. HALLINAN | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    July 25, 2018


        Following a jury trial, Defendant Charles M. Hallinan
was convicted of conspiracy to violate the Racketeer Influenced
and Corrupt Organization ("RICO") Act, conspiracy to commit
fraud, mail fraud, wire fraud, and money laundering, and
sentenced to 168 months of imprisonment.  At the sentencing
hearing, the Court determined that Hallinan presented a risk of
flight, but allowed Hallinan to self-report to the Bureau of
Prisons ten days following the sentencing hearing on the basis
of stringent, temporary conditions imposed by the Court to
secure his appearance.  Hallinan has filed a notice of appeal
from his conviction and sentence, and now seeks bail pending his
appeal.[1]  The Government opposes the motion.  Following a hearing

---

[1]        Hallinan has been designated and he is now scheduled
to report to Butner Federal Medical Center in Butner, North
Carolina ("FMC Butner"), on July 30, 2018, by 2:00 p.m.

and for the reasons set forth below, the Court will deny the motion.

## I.   PROCEDURAL HISTORY

On March 31, 2016, Hallinan was indicted by a grand jury on two counts of conspiracy to violate the RICO Act in violation of 18 U.S.C. § 1962(d), one count of conspiracy to commit fraud in violation of 18 U.S.C. § 371, two counts of mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2, three counts of wire fraud and aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and nine counts of money laundering in violation of 18 U.S.C. § 1956(a)(2).  ECF No. 1.  Hallinan's co-defendant Randall P. Ginger was indicted on the same charges, and Hallinan's co-defendant Wheeler K. Neff was indicted on all of the same charges except money laundering.  See id.  A second grand jury was later empaneled and returned a superseding indictment on December 1, 2016.  ECF No. 87.

Hallinan and Neff filed a motion to dismiss the charges against them on February 8, 2017, ECF No. 149, which the Court denied on August 15, 2017, ECF No. 203.  A jury trial commenced on September 26, 2017, against Hallinan and Neff.[2]

---

[2]     Defendant Ginger did not appear for trial.  He is reportedly currently living in Canada.

On November 27, 2017, the jury returned a guilty verdict against both Defendants on all counts of the superseding indictment.  On July 6, 2018, following a hearing, the Court sentenced Hallinan to 168 months of imprisonment on Counts One, Two, and Four through Seventeen of the superseding indictment, and 60 months of imprisonment on Count Three, to run concurrently.  ECF No. 505.

On July 10, 2018, Hallinan filed a notice of appeal from the judgment.  ECF No. 509.  The same day, Hallinan filed an emergency motion for bail pending appeal, which asserts that (1) Hallinan must be released immediately because the Bureau of Prisons cannot adequately treat his bladder and prostate cancer; and (2) Hallinan should be granted bail pending appeal because he is not a risk of flight or danger to the community, and there are substantial issues on appeal for which a reversal, new trial, or resentencing is likely.  ECF No. 510.  Regarding the substantial issues on appeal, Hallinan asserts that (1) the Court erred when it permitted the Government to use a privileged email at trial on the basis of the crime-fraud exception; (2) the Court failed to adequately account for Hallinan's medical conditions during sentencing, and inappropriately considered ex parte communications;[3] and (3) the Court failed to

---

[3]     Hallinan claims that the Court had "ex parte" contact with Joyce Horikawa, the Deputy Regional Counsel for the Bureau

instruct the jury on willfulness for the RICO counts in light of Hallinan's good faith defense.  See id.

The Government filed a response in opposition on July 18, 2018.  ECF No. 519.  The Court held a hearing on July 23, 2018, and is now ready to rule on the motion.

---

of Prisons.  There was no "ex parte" contact.  Neither Ms. Horikawa nor the Bureau of Prisons is a party, an expert witness, or a fact witness in the case.  See In re School Asbestos Litigation, 977 F.2d 764, 789 (3d Cir. 1992) (defining ex parte communications as communications between a judge and a litigant without the opposing party present).  Prior to the sentencing hearing, the Court held a brief telephone conversation with Ms. Horikawa, in the presence of the Supervisory Deputy U.S. Marshal, the U.S. Probation Officer assigned to the case, and the Court's Deputy Clerk and law clerk.  No one at the United States Attorney's Office for the Eastern District of Pennsylvania was a party to the conversation.  The purpose of the call was to ascertain how long it would take for the Bureau of Prisons to designate Hallinan to a facility and whether bed space would be available, given the possibility that Hallinan would be remanded immediately after sentencing.  Ms. Horikawa confirmed that the Bureau could make the designation within two to three days.  Later that day, Ms. Horikawa called the Court's Deputy Clerk to confirm that there were beds available at Butner Federal Medical Center in Butner, North Carolina.  Since the Court decided not to remand Hallinan immediately after sentencing, but instead to allow him to self-surrender, this information became irrelevant.  No information received during this brief conversation was used, considered, or relied upon by the Court during sentencing in determining whether to allow Hallinan to self-surrender, to find that he was a risk of flight, or for any other reason.

## II.  LEGAL STANDARD

"A person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal ... [must] be detained," unless the Court determines that:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b)[4] or (c)[5] of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in —
>
>> (i)   reversal,
>>
>> (ii)   an order for a new trial,
>>
>> (iii)  a sentence that does not include a term of imprisonment, or
>>
>> (iv)   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

The Third Circuit has established a four part test that must be satisfied in order for the court to grant bail pending appeal:

---

[4]      Section 3142(b) concerns release on personal recognizance or unsecured appearance bond.  18 U.S.C § 3142(b).

[5]      Section 3142(c) concerns release conditions when the Court "determines release [under personal recognizance or unsecured appearance bond] will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C § 3142(c).

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Zaverukha, No. 94-515-01, 2001 WL 873214, at *1 (E.D. Pa. May 14, 2001) (quoting United States v. Miller, 753 F.2d 19, 24 (3d Cir. 1985)).  The defendant has the burden of proving each of these elements.  Id.

A question raised on appeal is "substantial" if "the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful."  Miller, 753 F.2d at 23.  Fairly doubtful means "debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  United States v. Smith, 793 F.2d 85, 89 (3d Cir. 1986) (citing Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (alterations in original)); see also United States v. Roudakov, No. 03-91, 2005 WL 3263048, at *5 (E.D. Pa. Dec. 1, 2005).  The

substantial question must also be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  Miller, 753 F.2d at 23.

## III. DISCUSSION

Hallinan's motion raises two issues: (1) that he should be released on bail pending appeal pursuant to 18 U.S.C. § 3143(b); and (2) that his incarceration under his medical circumstances would violate the Eighth Amendment prohibition against cruel and unusual punishment, because the Bureau of Prisons cannot adequately treat his medical conditions while he is incarcerated.  Neither of these arguments has merit.

### A.   Bail Pending Appeal Pursuant to 18 U.S.C. § 3143(b)

In his motion, Hallinan contends that he must be released on bail pending appeal pursuant to 18 U.S.C. § 3143(b) because (1) he is not a risk of flight; (2) he is not a danger to the community; and (3) he raises substantial issues on appeal that are likely to result in reversal, a new trial, or a sentence that does not include a term of imprisonment.  See

Miller, 753 F.2d at 24.  The Government concedes that Hallinan does not pose a danger to the community, and the Court agrees.[6]

The Court cannot release Hallinan on bail pending appeal unless Hallinan proves "by clear and convincing evidence" that he is "not likely to flee."  18 U.S.C. § 3143(b).

Hallinan argues that he is not a risk of flight because he has surrendered his passport, all of his family is in the United States, he is a first time offender, he has known of the investigation of the case for several years, his flight would leave his wife, step-daughters, and step-grandchild without a home, and in his medical condition he would want to be with his family here in Philadelphia.

At sentencing, the Court considered these circumstances and found that Hallinan presented a risk of flight for several reasons.[7]  First, in response to defense counsel's assertions that Hallinan was not a risk of flight because he knew this day was coming for many years, throughout the investigation, indictment, and prosecution of the case, the

---

[6]     A defendant generally does not pose a danger on the community when the offense conduct has ceased.  Cf. United States v. Provenzano, 605 F.2d 85, 89 (3d Cir. 1979) (affirming denial of bail on the basis of the trial judge's finding that the defendant would continue his racketeering activities if released on bail pending appeal).

[7]     The Court's reasons for finding that Hallinan had a risk of flight are presented here in the same order in which they were addressed at sentencing.

Court disagreed, explaining that Hallinan's behavior in fact suggested that he never thought he would face punishment for his crimes.  The Court noted that Hallinan claimed his innocence throughout the proceedings, and in fact told the Probation Office during its presentence investigation that he was "shocked" by the verdict, that "everything" he did was "100% legal from day one," that some expect him to be "contrite" or "sorry" but he feels "exactly the opposite," and that he has never committed a crime in his life.  Presentence Investigation Report at ¶¶ 66, 123.  This is not a declaration by someone who ever expected to go to prison.

Second, the Court explained that Hallinan is facing a substantial sentence of fourteen years of imprisonment, which, particularly at the age of 77, provides an incentive to flee. Id. at 209:25-210:1.

Third, Hallinan has shown no remorse and no contrition, and the Court was skeptical that he was now ready to accept a lengthy term of imprisonment as just punishment.  Id. at 210:2-4.

Fourth, during the sentencing hearing, the Court found by a preponderance of the evidence that Hallinan obstructed justice in this case.  Id. at 210:5-6.  In particular, the Court overruled Hallinan's objection to a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the Sentencing

9

Guidelines, finding that Hallinan had attempted to manipulate the legal system by hiring lawyers to obstruct justice in the Indiana Litigation and in this Court.  This indicated to the Court that Hallinan was capable of attempting to corrupt the legal system.

Fifth, all of the property that Hallinan previously posted in order to secure his appearance at the execution of his sentence was forfeited to the Government on the date of Hallinan's sentencing, with the possible exception of the home owned by Hallinan and his spouse as tenants in the entirety. Id. at 210:7-8.  Therefore, there are few assets which could secure a release on bond.

Sixth and finally, due to Hallinan's refusal to reveal his finances to the Probation Officer during the presentence investigation, the Court does not "really know the extent of the assets that he has and to what extent those assets could be secured and hidden and facilitate flight."  Id. at 210:9-11. Although Hallinan is suffering from a serious medical condition, he is ambulatory, and there is no immediate medical emergency, and no reason to believe that Hallinan will not be able to afford and receive medical care in another country, particularly one that does not have an extradition treaty with the United States.  Id.  Hallinan has had many opportunities to demonstrate to the Court that he lacks the resources to flee the country and

10

finance his medical treatment elsewhere, and he has chosen not to do so.[8]

On the basis of these facts, the Court found that Hallinan was a risk of flight.  The Court then considered whether he should be allowed to self-report or be remanded immediately after sentencing.  Hallinan pointed out the stressors accompanying the transfer from the Philadelphia Detention Center to FMC Butner, and the possible impact of the transfer on his medical condition.

In light of Hallinan's argument and upon consideration of 18 U.S.C. § 1342(c), the Court found that there were certain temporary, stringent conditions that could be imposed on Hallinan in order to secure his appearance for the execution of his sentence, notwithstanding his risk of flight.  See ECF No. 507.  These restrictions included committing Hallinan to the

---

[8]     Although of course Hallinan has a right to assert his Fifth Amendment privilege against self-incrimination, there is no violation of the Fifth Amendment if his refusal to provide information regarding his finances leaves him without sufficient evidence to meet his burden to establish that he is not a risk of flight.  See United States v. Rylander, 460 U.S. 752, 758 (1983) (explaining that although "the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness . . . declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production"); Williams v. Florida, 399 U.S. 78, 83-84 (1970) ("That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.").

custody of his spouse, directing Pretrial Services to make daily unannounced home visits, requiring Hallinan to wear an ankle bracelet, and requiring Hallinan to post a $1,000,000 bond with ten percent cash.  See id.  Under these exigent circumstances, the Court allowed Hallinan to report in ten days.

Now, the Court is asked to extend these conditions, or add other conditions, for the duration of the appeal and even thereafter, until Hallinan's medical treatment by outside physicians is completed.[9]  This request will be denied because the Court concludes that each day Hallinan is allowed to remain on bail increases his risk of flight.

Although the Court was able to craft temporary, stringent conditions suitable for a short period of time to ensure Hallinan's self-reporting, it would not be appropriate for the Court to extend those temporary conditions for the duration of the time pending the resolution of Hallinan's appeal and, if the appeal fails, thereafter.  Directing a probation officer to make unannounced daily visits to Hallinan's home for the duration of the appellate process – which could take longer than a year - would impose a tremendous burden on the resources of the United States Probation Office.  Committing Hallinan to

---

[9]     During the hearing, defense counsel suggested that the Court grant the motion for bail pending appeal, and then, if the appeal is not successful, reconsider the issue of whether Hallinan's medical condition is such that he should not be incarcerated.  See Hr'g Tr., July 22, 2018, at 29:12-20.

the custody of his spouse for the duration of the appeal would thrust upon a civilian third party, even one willing to accept it, the enormous, long-term responsibility of ensuring that Hallinan complies with his self-reporting obligation.

Given that Hallinan has failed to establish by clear and convincing evidence that he does not pose a risk of flight, and there are no long-term conditions that the Court could impose to secure his appearance that are appropriate to impose for the duration of the appeal pursuant to 18 U.S.C. § 1343(c), Hallinan has failed to satisfy the requirements of 18 U.S.C. § 1343(b).  Therefore, the Court will deny Hallinan's motion for bail pending appeal.

As Hallinan has failed to satisfy the requirement that he establish by clear and convincing evidence that he is not a risk of flight, the Court need not reach the question of whether Hallinan's appeal raises substantial questions of law or fact likely to result in reversal, a new trial, or a sentence that does not include a term of imprisonment.  However, even if the Court were to reach that question, the Court would find that Hallinan does not raise any substantial questions that are likely to result in reversal, a new trial, or a sentence that does not include a term of imprisonment.[10]

_____

[10]        First, Hallinan asserts that the Court erred when it permitted the Government to introduce at trial a privileged July

B.  <u>Medical Conditions</u>

Hallinan separately argues that he cannot be incarcerated on July 30, 2018, because the Government has not met its burden to establish that the Bureau of Prisons can adequately treat his bladder cancer and prostate cancer. Hallinan does not cite any cases where a court has accepted this

---

2013 email between Defendant Wheeler Neff and Hallinan, <u>see</u> Gov't Ex. 400, on the basis that it fell within the crime-fraud exception to the attorney work product rule.  As the Court explained in its order dated August 15, 2017, the Court found that the Third Circuit's earlier decision on an appeal from a ruling by the grand jury judge, <u>see</u> <u>In re Grand Jury Matter #3</u>, 847 F.3d 157 (3d Cir. 2017), did not bar the admission of the email, because there was a reasonable basis to suspect that Defendants were committing or intending to commit separate and independent tax crimes, and that the email was used in furtherance of those crimes, as opposed to the crimes the Third Circuit decision had addressed.  <u>See</u> ECF No. 203 n.2. Therefore, the Court's decision is not in conflict with the Third Circuit's earlier decision.  Second, Hallinan argues that the Court erred by discounting his experts regarding his medical conditions at sentencing.  As discussed below, <u>see</u> <u>infra</u> at 14-20, the Court did not discount Hallinan's experts, but in fact fully considered their views and determined that, even if true, the opinions the experts proffered did not support a finding that FMC Butner would not be able to treat Hallinan's medical conditions or transport Hallinan to outside medical facilities for treatment.  Indeed, the Court granted a downward departure and variance based partially on Hallinan's expert testimony. Hallinan's assertion regarding the "ex parte" conversation is incorrect for the reasons discussed in footnote 3.  Finally, the Court's exclusion of a "willfulness" instruction from the jury instructions does not raise a substantial issue on appeal.  As the Court explained during the charge conference, the instructions stated that the Government needed to establish that Hallinan knew that the purpose of the conspiracy was to collect unlawful (as opposed to lawful) debts, and therefore the instructions separated out wrongful conduct from otherwise innocent conduct.  <u>See</u> <u>Elonis v. United States</u>, 135 S. Ct. 2001, 2010-11 (2015).

argument in connection with a motion for bail pending appeal
pursuant to 18 U.S.C. § 3143(b), or any other statute governing
the release of a criminal defendant on bail.  Instead, Hallinan
argues that he cannot be incarcerated because, given his medical
conditions, incarcerating him would constitute cruel and unusual
punishment in violation of the Eighth Amendment.  See Hallinan
Mot. Release Bail at 8, ECF No. 510 (quoting Estelle v. Gamble,
429 U.S. 97 (1976) (explaining that the elementary principles
underlying the Eighth Amendment "establish the government's
obligation to provide medical care for those whom it is
punishing by incarceration")).[11]

     The Court already considered and rejected this Eighth
Amendment argument at sentencing, deciding that a sentence of

---

[11]     The claim that the Bureau of Prisons is unable to
provide adequate medical care is neither novel nor unique, and
is often asserted by inmates claiming inadequate medical care.
The Third Circuit has generally denied such claims, when
asserted by an inmate, on the basis that a claimant must
demonstrate "acts or omissions sufficiently harmful to evidence
deliberate indifference to serious medical needs." Estelle, 429
U.S. at 106.  Deliberate indifference requires "obduracy and
wantonness . . . [,] which has been likened to conduct that
includes recklessness or a conscious disregard of a serious
risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)
(quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (citation
omitted).  An "inadvertent failure to provide adequate medical
care" is not sufficient, Estelle, 429 U.S. at 105, nor is a
disagreement regarding medical judgment, White v. Napoleon, 897
F.2d 103, 110 (3d Cir. 1990).  Courts will defer to the judgment
of a prison doctor "unless it is such a substantial departure
from professional judgment, practice or standards as to
demonstrate that the doctor did not base the decision on such a
judgment." White, 897 F.2d at 113.

incarceration was appropriate and would not violate the Eighth Amendment.  Although the Court disagreed with Hallinan's contention that he could not be incarcerated at all due to his medical condition, the Court took Hallinan's medical condition into consideration in crafting the sentence and granted him both a downward departure and a downward variance from the applicable Sentencing Guidelines range based upon Hallinan's age and medical condition.

Although Hallinan frames his request for a stay of the execution of his sentence under the guise of a motion for release on bail pending appeal, it is essentially either a petition for reconsideration of Hallinan's sentence of imprisonment pursuant to Federal Rule of Criminal Procedure 35(a), or an anticipatory petition for a writ of habeas corpus seeking release from custody.  In either case the arguments fail, because Hallinan does not assert a proper ground for a correction of his sentence pursuant to Rule 35(a),[12] and he cannot file a petition for a writ of habeas corpus challenging his incarceration before he is in custody.  See 28 U.S.C. § 2241, 28 U.S.C. § 2255(a).

---

[12]     Hallinan does not assert that his sentence resulted from an "arithmetical, technical, or other clear error," as required to give the Court the authority to revisit a sentence pursuant to Federal Rule of Criminal Procedure 35(a).  Fed. R. Crim. P. 35(a).

Even if Hallinan's arguments that he should not be incarcerated at all pending completion of his medical treatment were properly before the Court now, the Court already considered and rejected them at sentencing.[13]

The Government's expert report described the Bureau of Prison's protocol for prisoners with long-term medical conditions, including prisoners undergoing chemotherapy for various forms of cancer.[14]  In particular, the report explains

---

[13]   Hallinan argues that (1) he is currently undergoing a six-week chemotherapy treatment for bladder cancer that cannot be interrupted; (2) following chemotherapy, he will need to have surgery to access how he responded to chemotherapy; (3) his prostate cancer treatment will require monthly hormone injections and then, possibly, 44 days of daily radiation treatments; and (4) requires a team of doctors to treat his numerous and life-threatening medical conditions.  Hallinan Mot. Release Bail at 2-4.  According to Hallinan, the Bureau of Prisons faces "extreme staff shortages, lack of access to qualified medical providers, lack of financial resources, and administrative problems in even getting patients to their doctor appointments," including lock-downs or the failure to have adequate personnel to drive inmates to their appointments.  Id. at 6.  Hallinan further argues that, at sentencing, his two experts provided unopposed testimony that the Bureau of Prisons has a long track record of giving substandard care to inmates. See id.  All of these contentions were addressed by the Court in the course of the sentencing hearing.

[14]   Hallinan argues that the Government's expert report was merely a form letter.  However, the Government's expert report noted that all 128 pages of Hallinan's medical reports had been reviewed, summarized Hallinan's specific medical conditions, and concluded that the Bureau of Prisons will be able to manage and treat Hallinan's specific medical conditions. Further, even one of Hallinan's own expert witnesses testified that while she was employed by the Bureau of Prisons and had responsibility for drafting these types of medical reports, she had rejected and suggested edits to similar expert reports

that FMC Butner "operates an intensive primary care management unit and utilizes contract physicians to provide in-house Cardiology, Hemotology, Oncology, and Chemotherapy specialty services."  Letter of Janet Burns, ECF No. 497 (emphasis added). The report explained that prisoners are transported off-site for any treatments that are not available within the prison facilities themselves.  The report summarized Hallinan's specific medical conditions, stating that the expert had reviewed all 128 pages of Hallinan's medical reports.  The report closed by concluding that the Bureau of Prisons will be able to manage and treat Hallinan's specific medical conditions.

Further, at the sentencing hearing, a representative from the Bureau of Prisons testified that approximately 300 prisoners with active cancer treatments are held at FMC Butner. The expert witness also confirmed the statement in the expert report that if any other specialized medical care is needed that cannot be provided within FMC Butner, inmates are transported off-site to medical centers within the local community for treatment.

Hallinan attempted to contradict the Government's expert report and witness by presenting the testimony of one of his experts, who testified that there were some circumstances,

prepared for her signature, making clear that the expert reports issued by the Bureau of Prisons are not pro forma.

such as staff shortages and lock-downs for security reasons, that may delay a prisoner's transportation to an off-site medical facility.  Relying on this testimony in combination with his doctors' medical expert reports, which explained that Hallinan's treatment plan is complex and extensive and that any "missteps" may cost Hallinan his life, Hallinan argued that he could not be adequately treated by the Bureau of Prisons.

Upon consideration of both parties' expert reports and testimony, the Court ultimately concluded that Hallinan would be able to receive adequate cancer treatment while incarcerated at FMC Butner, including by transportation off-site for any additional specialized services that are not provided within FMC Butner itself.  The Court explained that Hallinan's general assertions regarding safety concerns and lack of staffing within the Bureau of Prisons as a whole do not establish that the FMC Butner, in particular, will be unable to transport Hallinan to his medical appointments within an appropriate window of time such that Hallinan would be able to receive appropriate medical treatment.[15]

---

[15]    Hallinan argues that the Court failed to fully consider his experts' opinions at sentencing, citing United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009), in which the Third Circuit vacated a child pornography sentence on appeal on the basis that the trial court failed to consider the individual characteristics of the offender during sentencing.  See id.  In Olhovsky, the Third Circuit found that nothing in the record suggested that the trial court considered the concerns expressed

As the Court found at sentencing, upon consideration of all of the testimony and evidence introduced by Hallinan and the Government, the Government has met its burden to establish that the Bureau of Prisons can adequately treat Hallinan's medical conditions.  Therefore, the Court will deny Hallinan's request for bail pending appeal on the basis of his medical condition.

## IV.   CONCLUSION

For the reasons stated above, the Court will deny Hallinan's emergency motion for bail pending appeal.

An appropriate order follows.

---

by the defendant's therapist that the defendant was developmentally immature and would be harmed by a long prison term.  See id. at 551.  Olhovsky is not helpful here.  First, Olhovsky was a direct appeal from a sentence, not a request for bail pending appeal.  Second, here, the Court expressly considered the testimony of Hallinan's medical experts, and relied upon those experts, as evidenced by the Court granting both a downward departure and a variance from the applicable Sentencing Guidelines range based partially on Hallinan's expert's testimony.