```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :    CRIMINAL ACTION
                              :    NO. 16-130-01
         v.                   :
                              :
CHARLES M. HALLINAN           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           February 22, 2021

Presently before the Court is the ancillary petition filed by third party Linda Hallinan, one of two daughters of Defendant Charles Hallinan ("Mr. Hallinan"). Pursuant to 21 U.S.C. § 853(n) and 18 U.S.C. § 1963(l), Linda Hallinan seeks to prevent the government from forfeiting a $2 million series A-1 senior secured promissory note in her name issued by Whetstone Partners, Inc. (the "Whetstone Note"). The government, in attempting to collect on two forfeiture money judgments against Mr. Hallinan totaling $64,390,829.90, has identified the Whetstone Note as a directly forfeitable interest of Mr. Hallinan's RICO enterprise.[1]

---

[1] The RICO enterprise is known as the Hallinan Payday Lending Enterprise (the "HPDLE"), which the Court previously held during Mr. Hallinan's sentencing includes all interests of Hallinan Capital Corp ("HCC").

For the reasons stated below, the Court will deny Linda Hallinan's ancillary petition, allowing the government to file a motion for a final order of forfeiture.

## I. Factual and Procedural Background

The evidence shows that in October 2011, Mr. Hallinan purchased a promissory note for $3,080,000 from Whetstone Partners with funds from an HCC account.[2] The note was purchased during Mr. Hallinan's crimes, which spanned from 2007 to 2013. In December 2012, Mr. Hallinan assigned $2 million of the note to Linda Hallinan and Whetstone issued new notes to reflect the transaction. Linda Hallinan claims that she was given the $2 million Whetstone Note in exchange for her promise to reside in the eastern Pennsylvania area. The government argues that, to the contrary, the transfer of the Whetstone Note to Linda Hallinan was merely one of many gifts Mr. Hallinan gave to his daughter.

On March 31, 2016, Mr. Hallinan was indicted on various crimes including RICO conspiracy, conspiracy, mail fraud, wire fraud, and money laundering in connection with an illegal payday lending scheme. On November 27, 2017, a federal jury convicted Mr. Hallinan of these crimes. On July 6, 2018,

---

[2] After a full round of briefing, the Court held an evidentiary hearing on Linda Hallinan's ancillary petition on February 26, 2020.

the Court sentenced Mr. Hallinan to 168 months' imprisonment and ordered him to pay a $2.5 million fine and two forfeiture money judgments totaling $64,390,829.90. The Court also ordered Hallinan to forfeit all interests of the HPDLE including many specific properties traceable to companies that comprised the HPDLE, including HCC ("First Preliminary Order of Forfeiture"). However, the Whetstone Note was not specifically listed in the July 6, 2018 First Preliminary Order of Forfeiture.

On January 24, 2019, the government moved for a second preliminary order of forfeiture. ECF No. 578. Linda Hallinan's Whetstone Note was one of four promissory notes from Whetstone Partners that the government identified in that motion. The government claimed that the Whetstone Note is directly forfeitable as an interest in the RICO enterprise which was previously generally identified in the First Preliminary Order of Forfeiture (as all HPDLE assets) but which was not specifically discovered until after that order was entered. Mr. Hallinan did not oppose the motion, and on March 15, 2019, the Court granted the government's motion pursuant to Federal Rule of Civil Procedure 32.2(e) ("Second Preliminary Order of Forfeiture"). ECF No. 582.

On May 17, 2019, Linda Hallinan filed the present ancillary petition under 21 U.S.C. § 853(n) and 18 U.S.C. § 1963(l) seeking to prevent the forfeiture of the Whetstone Note.

3

She claims that her interest in the Whetstone Note is superior to the government's interest and that she is also a bona fide purchaser for value of the Whetstone Note because she received it from her father "in exchange for her promise to reside in Eastern Pennsylvania and not leave the metropolitan area." ECF No. 599 at 1.

On February 3, 2020, and in relation to her petition, the Court held a hearing on Linda Hallinan's motion to compel. In the motion, Linda Hallinan sought the production of information regarding when the government knew the Whetstone Note was traceable to the HPDLE. The Court denied the motion, reasoning that under United States v. Nicoll, 711 F. App'x 108, 110-11 (3d Cir. 2017) and the procedures codified by Congress in 21 U.S.C. § 853(n)(6) and 18 U.S.C. § 1963(l)(6), this information was irrelevant because when the government learned of the Whetstone Note went to the forfeitability of the Whetstone Note, which a third party has no standing to challenge. ECF No. 703. Instead, a third party claiming an interest in forfeited property may file an ancillary petition in which it demonstrates that it "has a vested right in the property superior to that of the defendant, or it is a bona fide purchaser of the property." Nicoll, 711 F. App'x at 110 (citing

United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991)); 21 U.S.C. § 853(n)(6); 18 U.S.C. § 1963(l)(6).[3]

On February 26, 2020, the Court held a hearing on Linda Hallinan's ancillary petition. The day before the hearing, the government filed three motions in limine: (1) to limit the testimony of Linda Hallinan's friend; (2) to exclude Linda Hallinan's tracing expert; and (3) to admit Mr. Hallinan's invocation of the Fifth Amendment regarding the existence of an agreement for the Whetstone Note between him and Linda Hallinan. The Court allowed all the testimony to be presented subject to its subsequent rulings on the motions. Ultimately, the Court granted all three motions and allowed the parties to file final post-hearing briefs.

**II. Standards**

After a court enters an order of preliminary forfeiture in a criminal forfeiture proceeding, Congress has provided third parties that claim to have an interest in the relevant property an avenue to challenge the property's

---

[3] Previously, on October 17, 2019, the Court held a hearing on Linda Hallinan's motion for judgment on the pleadings. The Court denied that motion as procedurally improper but has since addressed in this opinion and its preceding orders the substantive issues raised in the motion.

forfeiture. Under 21 U.S.C. § 853(n) and 18 U.S.C. § 1963(l),[4] a court must amend the preliminary order of forfeiture and remove the relevant property therefrom if the petitioner demonstrates by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6) & 18 U.S.C. § 1963(l)(6); Lavin, 942 F.2d at 179; Nicoll, 711 F. App'x at *110-11. "By statute, a third party cannot challenge an order of preliminary forfeiture in criminal proceedings over property forfeited to the Government as a result of a criminal conviction. 21 U.S.C. § 853(k)" but must instead follow the procedures described in Sections 853(n) and 1963(l). Nicoll, 711 F. App'x at 110.

**III. Discussion**

Linda Hallinan seeks to prevent the forfeiture of the $2 million Whetstone Note, claiming that it belongs to her and

---

[4] Section 853 regards general criminal forfeiture while Section 1963 is specific to RICO. The language is identical in both provisions.

not to the government. Linda Hallinan may prevail only if she proves by a preponderance of the evidence that she either has a superior interest in the Whetstone Note or she is a bona fide purchaser for value of the Whetstone Note. The Court will address each argument in turn.[5]

---

[5] Many of Linda Hallinan's other arguments impermissibly go to the forfeitability of the Whetstone Note, and most of these the Court has previously rejected. These are arguments that could have been but were not made by Mr. Hallinan, the Defendant, at the time the Whetstone Note was preliminarily forfeited. See Nicoll, 711 F. App'x at 110-11.

For example, the government's contention that the Whetstone Note is directly forfeitable as an interest of the RICO enterprise relies on Federal Rule of Criminal Procedure 32.2(e) which allows the government to move the court to amend an existing order of forfeiture to include property that "is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered." Fed. R. Crim. P. 32.2(e)(1)(A). Linda Hallinan argues that the Whetstone Note was not identified in the original preliminary order of forfeiture and that the government knew about the Whetstone Note before the order was entered. These arguments go to the forfeitability of the Whetstone Note rather than to whether Linda Hallinan has a superior interest or is a bona fide purchaser for value. The Court nonetheless concludes that the Whetstone Note, proven to have been purchased solely with HCC funds, is an interest of the HPDLE and, thus, was generally identified in the original preliminary order of forfeiture which forfeited all HPDLE interests. The Court will not discuss these precluded arguments further.

Similarly, Linda Hallinan raises constitutional arguments that are currently irrelevant since she has no standing to raise them. Specifically, she argues that the forfeiture of the Whetstone Note violates her Eighth Amendment right against excessive fines and her rights under the Due Process Clause. However, until Linda Hallinan proves that she has an ownership interest in the Whetstone Note, she will be unable to show a constitutional violation or a deprivation related to it. See, e.g., Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) (providing that a person must

### A. The Whetstone Note is Directly Forfeitable as an Actual Interest in the HPDLE

Linda Hallinan contends that the government sought to forfeit the Whetstone Note as a substitute asset. The government claims that it is seeking to directly forfeit the Whetstone Note as an interest of the RICO enterprise. Whether the Whetstone Note is directly forfeitable as an enterprise interest or forfeitable only as a substitute asset is key to determining whether Linda Hallinan has a superior interest to the government and, thus, has the right to hold the Whetstone Note. Under the relation-back doctrine as codified in 18 U.S.C. § 1963(c), the government's interest in directly forfeitable property vests at the time of the offense conduct, not when the individual is indicted (as the parties agree is the case for substitute property). 18 U.S.C. § 1963(c); United States v. Timley, 507 F.3d 1125, 1130 (8th Cir. 2007).

---

have "a legitimate claim of entitlement to" property in order to trigger the protections of the Due Process Clause) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)); Hopkins v. Okla. Pub. Emps. Ret. Sys., 150 F.3d 1155, 1162 (10th Cir. 1998) (concluding that there was no violation of the Eighth Amendment Excessive Fines Clause because the defendant had no vested property right in his forfeited pension plan). Moreover, having fully participated in a hearing on the ancillary petition, Linda Hallinan has received due process in connection with her claim. The Court will not address these constitutional issues further and will instead focus on the relevant statutory inquiries of whether Linda Hallinan has a superior interest in the Whetstone Note or is a bona fide purchaser for value.

Here, Linda Hallinan received the Whetstone Note (in December 2012) after the criminal conduct by Mr. Hallinan had occurred (between 2007 and 2013), but before Mr. Hallinan was indicted (in March 2016). Thus, Linda Hallinan's interest can only be superior if the Whetstone Note is a substitute asset.

In the government's January 24, 2019 motion entitled "Motion of United States of America for Preliminary Order of Forfeiture for Substitute Assets and Additional Property Subject to Forfeiture," ECF No. 578, the government asserted that the original note issued by Whetstone (which was later split between Mr. Hallinan and Linda Hallinan) was purchased completely with HPDLE/HCC funds. At the February 26, 2020 hearing on Linda Hallinan's petition, the government proved this fact primarily through the testimony of Whetstone Controller Maria Mendez Kozaric and Joseph Piccione, Litigation Financial Analyst for the U.S. Attorney's Office.[6]

While the government did seek certain assets as substitutes in the January 24, 2019 motion, including some of the other notes issued by Whetstone, in regards to Linda

---

[6] Specifically, Ms. Kozaric testified that Whetstone's records showed that the original $3,080,000 promissory note (from which the Whetstone Note originates) was paid for solely with wire transfers from an HCC account. Likewise, Mr. Piccione testified that he had traced the funds used to purchase the original promissory note to an HPDLE interest, specifically, funds from an HCC Bank of America Account ending in 1146.

9

Hallinan's particular Whetstone Note, the government claimed that "[t]he investigation has shown that <u>this promissory note was purchased with funds from an HPDLE account</u>, specifically a Hallinan Capital Corp. bank account." ECF No. 578 at 13 (emphasis added). The government continued that:

> As noted above, on July 6, 2018, the Court ordered Hallinan to forfeit any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over the HPDLE. [Docket 505 ¶ 3] On June 27, 2018, the Court found that Hallinan Capital Corp. was included in the HPDLE. [Docket 494, Findings of Fact ¶ 8] <u>Since the funds used to purchase the two notes were an asset of the enterprise, that is, funds belonging to Hallinan Capital Corp., the government is entitled to forfeit these two notes as an asset of the HPDLE</u> and as a substitute asset of the defendant in satisfaction of the forfeiture money judgement.

<u>Id.</u> at 15 (emphasis added). Under these circumstances, the Court concludes that the government sought forfeiture of the Whetstone Note primarily as a direct interest of the enterprise, and that the Whetstone Note, having been paid for with HCC funds is, in fact, a directly forfeitable interest of the RICO enterprise.

Linda Hallinan takes issue with the fact that neither the January 24, 2019 motion for additional preliminary forfeiture nor the order granting it cites to 18 U.S.C. § 1963(a), the RICO provision concerning directly forfeitable assets, but instead cites only to 18 U.S.C. § 1963(m) and 21 U.S.C § 853(p), the substitute asset provisions for RICO and criminal forfeiture generally.

10

However, Linda Hallinan overlooks that both the motion and the First Order of Forfeiture also cite to Federal Rule of Criminal Procedure 32.2(e), a rule also dealing with criminal forfeitures. Specifically, at subsection (e)(1)(A), Rule 32.2 provides for the direct forfeiture of property that "is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered." Fed. R. Crim. P. 32.2(e)(1)(A). It is clear from the government's submissions and evidence, as well as from the government's reliance on Rule 32.2(e), that the Whetstone Note is directly forfeitable and the government sought to directly forfeit it at the time it obtained the Second Preliminary Order of Forfeiture.

Therefore, the Court concludes that Linda Hallinan has failed to meet her burden of establishing that her interest is superior to the government's interest since the Whetstone Note is directly forfeitable and not a substitute asset. In light of the relation-back doctrine, the government's interest in the Whetstone Note vested at the time of the criminal act and predates any interest that Linda Hallinan obtained. As a result, Linda Hallinan may prevent forfeiture of the Whetstone Note only if she can prove that she is a bona fide purchaser for value. 21 U.S.C. § 853(n)(6)(B); 18 U.S.C. § 1963(l)(6)(B).

### B. Linda Hallinan is not a Bona Fide Purchaser for Value of the Whetstone Note

Linda Hallinan argues that she is a bona fide purchaser for value of the Whetstone Note because she promised to stay in the eastern Pennsylvania area in exchange for the transfer to her of the Whetstone Note. Linda Hallinan contends her promise constitutes valuable consideration. On the other hand, the government asserts that Mr. Hallinan gave the Whetstone Note to Linda Hallinan as a gift without any financial consideration in return.

In support of her contention that there was an agreement between her and her father, Linda Hallinan primarily relies on the following evidence: (1) her own testimony that her father offered the Whetstone Note in exchange for her agreement to stay in the eastern Pennsylvania area; and (2) her friend's testimony that she heard Mr. Hallinan state to Linda Hallinan that he and Linda Hallinan "had a deal."[7] Mr. Hallinan declined to testify regarding the existence of agreement and instead asserted his Fifth Amendment privilege. Under these circumstances, the Court has not drawn an adverse inference from Mr. Hallinan's invocation of the Fifth Amendment.

---

[7] The friend also testified that Linda Hallinan told her specifics about the deal immediately after Linda Hallinan's encounter with Mr. Hallinan. However, the Court previously ruled that evidence to be inadmissible hearsay. ECF No. 773.

The testimony by Linda Hallinan and her friend about what Mr. Hallinan said is inadmissible hearsay unless permitted under a recognized exception. See Fed. R. Evid. 801-803. Therefore, Linda Hallinan's testimony could conceivably be admissible as evidence of an offer to enter into a contract. Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 298 F.3d 201, 218 n.20 (3d Cir. 2002) ("[A] statement offering to sell a product at a particular price is a 'verbal act,' not hearsay, because the statement itself has legal effect."). Similarly, the friend's testimony could fall under the excited utterance exception as Mr. Hallinan mentioned the existence of a "deal" in front of the friend while arguing with Linda Hallinan. Fed. R. Evid. 803(2); United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001). For the purposes of this opinion, the Court assumes both pieces of evidence are admissible, albeit of low value.

First, Linda Hallinan's friend's testimony has no evidentiary value because the description of the agreement is too general and indefinite. The friend did not testify that she heard any details from Mr. Hallinan concerning the "deal" between Linda Hallinan and her father or whether the deal mentioned by Mr. Hallinan related to any other agreement between them. Second, Linda Hallinan's testimony also carries little weight in that it is essentially ipse dixit--it is so because I

13

say so. At best, her testimony indicates that Linda Hallinan may believe now (or might have believed then) that there was an agreement between her and her father--not that there was, in fact, an agreement. A party's subjective belief is not probative of whether there was an agreement or the terms of the agreement. See DiDonato v. U.S. Legal Support, Inc., No. CV 15-6035, 2017 WL 3534571, at *4 (E.D. Pa. Aug. 17, 2017) ("[U]nder contract law, the objective manifestation of the parties is the governing factor regardless of subjective beliefs and reservations.") (quoting Rambo v. Greene, 906 A.2d 1232, 1236 (Pa. Super. Ct. 2006)). To the contrary, Linda Hallinan offers no objective evidence to support the existence of such an alleged agreement. Under these circumstances, the Court concludes that Linda Hallinan's belief that there was an agreement between her and her father for the transfer of the Whetstone Note does not satisfy her burden of proof of establishing the existence of the alleged oral agreement or its terms, especially given that Mr. Hallinan has on prior occasions given his daughters high value gifts.

The Court further concludes, however, that even if the oral agreement existed, the non-monetary consideration Linda Hallinan allegedly provided in exchange for the Whetstone Note does not entitle her to the status of bona fide purchaser for value in connection with a criminal forfeiture ancillary

petition under Sections 853(n)(6)(B) and 1963(l)(6)(B). A similar argument was visited and rejected by the Third Circuit in Lavin, 942 F.2d 177. In Lavin, the court acknowledged that "in light of section 853(o) and the well-settled dictates of forfeiture law, we are obliged to construe the term 'bona fide purchaser for value' liberally." 942 F.2d at 184. However, the court explained that Congress derived the bona fide purchaser exception "from hornbook commercial law" and that the court was "reluctant to expand the reach of section 853(n)(6)(B) beyond that of its commercial-law analog, UCC § 2-403(1)." Id. at 185, 187. The Third Circuit concluded that the purpose of the bona fide purchaser exception is "to promote finality in commercial transactions and thus to encourage purchases and to foster commerce." Id. at 186. Linda Hallinan argues that under Pennsylvania law, consideration for a contract may be non-monetary.[8] While that may be so in general under Pennsylvania

---

[8]   Linda Hallinan cites United States v. 1500 Lincoln Avenue, 949 F.2d 73 (3d Cir. 1991) for the proposition that Pennsylvania law applies to forfeiture proceedings, and, therefore, this Court should conclude that her non-monetary consideration meets the requirements for the bona fide purchaser for value exception. However, 1500 Lincoln Avenue is an in rem civil forfeiture case in which the Third Circuit merely looked to state law for the definition of tenants by the entireties. Id. at 75-77. The case did not involve a criminal forfeiture, ancillary proceeding, or any discussion of bona fide purchaser for value. The case simply does not stand for the proposition that Pennsylvania law should dictate the contours of the bona fide purchaser for value exception.

law, Lavin is based on the construction of a federal statute and not upon state law. Linda Hallinan does not cite to any cases contradicting Lavin's teachings limiting the bona fide purchaser for value exception to commercial transactions.

The Court concludes that because Linda Hallinan provided no commercially valuable consideration for the Whetstone Note, and in light of the guidance in Lavin, even if there was an agreement between Linda Hallinan and Mr. Hallinan, she is not a bona fide purchaser for value under these statutory subsections because the alleged agreement does not foster or encourage commerce.

**IV. Conclusion**

Because Linda Hallinan does not have a superior interest in the Whetstone Note and she is not a bona fide purchaser for value of the Whetstone Note, the Court must deny her ancillary petition, clearing the way for the government to forfeit the Whetstone Note.