IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES M. HALLINAN | : | NO.  16-130-1 |

_____

LINDA B. HALLINAN, in her own capacity
and as Guardian for her minor child

## <u>REPORT AND RECOMMENDATION</u>

ELIZABETH T. HEY, U.S.M.J.                                     August 17, 2021

Linda Hallinan, daughter of defendant Charles Hallinan, has filed an ancillary petition on behalf of herself and her daughter L.B.S., seeking to prevent the Government from forfeiting a total of $798,686.11 from three Pershing LLC ("Pershing") accounts, which hold proceeds of the sale of Clarity Services, Inc. ("Clarity") stock to Experian Holdings, Inc. ("Experian").  Doc. 851 ("Third Ancillary Petition") at 1.  The Government has filed a motion to dismiss the Third Ancillary Petition, relying on prior decisions of the Honorable Eduardo Robreno, to whom the case is assigned.  Doc. 882. Ms. Hallinan concedes that Judge Robreno's orders with respect to her prior ancillary petitions apply to her current petition, but she opposes the Government's motion to dismiss on the ground that forfeiture of the Pershing accounts amounts to double counting.  Doc. 884.

Judge Robreno referred the Third Ancillary Petition to me to prepare a Report and Recommendation.  Doc. 856.  For the reasons that follow, I recommend that the Government's motion to dismiss the ancillary petition be granted.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Judge Robreno previously summarized Charles Hallinan's conviction and sentence:

> On March 31, 2016, Mr. Hallinan was indicted on various crimes including RICO conspiracy, conspiracy, mail fraud, wire fraud, and money laundering in connection with an illegal payday lending scheme.  On November 27, 2017, a federal jury convicted Mr. Hallinan of these crimes.  On July 6, 2018, the Court sentenced Mr. Hallinan to 168 months' imprisonment and ordered him to pay a $2.5 million fine and two forfeiture money judgments totaling $64,390,829.90.  The Court also ordered Hallinan to forfeit all interests of the [RICO enterprise known as the Hallinan Payday Lending Enterprise ("HPDLE")] including many specific properties traceable to companies that comprised the HPDLE, including [Hallinan Capital Corp ("HCC")] . . . .

United States v. Hallinan, Cr. No. 16-130-1, __ F. Supp.3d __, 2021 WL 670066, at *1 (E.D. Pa. Feb. 22, 2021) ("Whetstone Op.") (Doc. 823).  In his June 27, 2018 Judgment and Preliminary Order of Forfeiture ("First Preliminary Order of Forfeiture"), Judge Robreno ordered the forfeiture of

> (1) any interest in, or property or contractual right of any kind affording a source of influence over any enterprise which Hallinan has established, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962, see 18 U.S.C. § 1963(a)(2)(D); and (2) any property constituting, or derived from, any proceeds which Hallinan obtained, directly or indirectly, from unlawful debt collection, in violation of 18 U.S.C. § 1962, see 18 U.S.C. § 1963(a)(3).

Doc. 495 at 2.[1]  The First Preliminary Order of Forfeiture included a list of specific assets to be forfeited but did not include the Pershing accounts relevant to the current motion. Id. at 5-9.

## II.   PRIOR DETERMINATIONS RELEVANT TO LINDA HALLINAN

On January 24, 2019, the government filed a motion seeking a second preliminary order of forfeiture, seeking to forfeit, among other things, four promissory notes from Whetstone Partners LLC ("Whetsone"), which the government claimed were owned by Mr. Hallinan and/or companies primarily controlled by him, as substitute assets and as additional property subject to forfeiture.  Doc. 578 at 11, 13.  On March 15, 2019, without any objection from Mr. Hallinan, Judge Robreno issued the requested preliminary order of forfeiture of the Whetstone promissory notes ("Second Preliminary Order of Forfeiture").  Doc. 582.

One of the Whetstone promissory notes, in the amount of $2 million, was owned by Ms. Hallinan.  She filed an ancillary petition[2] asserting her interest in that note, claiming that she received it from her father, defendant Charles Hallinan, on December 6, 2012, in exchange for her promise to reside in Eastern Pennsylvania and not leave the metropolitan area.  Doc. 599 at 1.  After holding a hearing, Judge Robreno determined

---

[1]Pinpoint citations refer to the Court's ECF pagination.

[2]Ms. Hallinan entitled her filing a "Third Party Claim."  Doc. 599.  Consistent with the language of the governing forfeiture provisions, I refer to her claims as ancillary petitions.  See, e.g., 18 U.S.C. § 1963(l)(6); 21 U.S.C. § 853(n)(6); Fed. R. Cr. P. 32.2(c).

that (1) Ms. Hallinan's interest in the note was not superior to the government's, and (2) she was not a bona fide purchaser for value.  Whetstone Op., 2021 WL 670066, at *4-6.  With respect to the former, Judge Robreno found that the Whetstone promissory note was "directly forfeitable" because it had been purchased with funds from the HPDLE account.  Id. at *5.[3]  As such, the government's interest in the Whetstone promissory note vested at the time of Mr. Hallinan's criminal acts and predated any interest in the note that Ms. Hallinan obtained.  Id. at *4.  With respect to the latter, assuming the admissibility of Ms. Hallinan's and a friend's testimony that Charles Hallinan had a "deal" with Ms. Hallinan to stay in eastern Pennsylvania, the testimony was too vague and subjective to establish an agreement.  Id. at *5-6.  Further, even assuming an oral agreement between Mr. Hallinan and his daughter, such an agreement did not elevate Ms. Hallinan to that status of a bona fide purchaser for value because she provided no commercially valuable consideration.  Id. at *6.

Also in the context of her First Ancillary Petition, Ms. Hallinan filed a motion to compel discovery relating to when the government became aware of the Whetstone promissory note and whether it should have provided earlier notice to Charles Hallinan of its intention to seek forfeiture of the note.  Doc. 681.  Judge Robreno denied the discovery motion, explaining that Ms. Hallinan's inquiries went to the preliminary forfeitability of the property, which she had no standing to challenge.

---

[3]The Government's motion sought forfeiture of "substitute assets and additional property subject to forfeiture."  Doc. 578 at 1, 8.  Judge Robreno clarified that the Whetstone promissory note was forfeitable as a direct, not substitute, asset.  Whetstone Op., 2001 WL 670066, at *4-5.

As the Third Circuit has provided, criminal forfeiture proceedings occur in two stages. First, "the Government must establish 'the requisite nexus between the [forfeited] property and the offense.' Fed. R. Crim. P. 32.2(b)(1)(A). A court will then make a preliminary forfeitability determination." United States v. Nicoll, 711 F. App'x 108, 110 (3d Cir. 2017). Only the defendant may challenge the preliminary forfeitability of an asset; a third party has no standing to challenge the order. Id. at *110-11. "Instead, a third party claiming an interest in forfeited property may file an ancillary proceeding in which he or she demonstrates" that he or she "has a vested right in the property superior to that of the defendant, or it is a bona fide purchaser of the property." Id. at *110 (citing United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991)). The third party's ancillary proceeding does not afford him or her "the opportunity to re-litigate matters pertinent to the prior stage of the proceedings from which that third party was statutorily excluded." Id. at *111. It is of no moment "whether the District Court committed procedural error afoul of Rule 32.2 [when determining forfeitability] because, even if it did, that error is irrelevant to [the third party's] claimed third-party interest." Id. at *110.

The discovery sought in the motion to compel is not relevant to the issues that will be before the court at the . . . hearing on Linda Hallinan's ancillary petition. At that hearing, the salient issues will be whether Linda Hallinan: (1) has a superior interest in the Whetstone note; or (2) is a bone fide purchaser. Id.

Doc. 703 at 1-2 n.1; see also United States v. Lungin, Cr. No. 12-372, 2015 WL 4936388,

at *3 (E.D. Pa. Aug. 17, 2015) (purpose of ancillary hearing to contest forfeiture is

merely to determine whether the property belongs to the third party).[4]

---

[4]Similarly, Judge Robreno precluded Ms. Hallinan from presenting expert testimony regarding how the funds that were later used to purchase the Whetstone note came into HCC (one of Charles Hallinan's companies), finding that such evidence was irrelevant to the issues to be decided in considering an ancillary petition claiming a third-party interest in the asset. Doc. 774.

Judge Robreno has issued additional preliminary forfeiture orders, including a February 26, 2020 order ("Fourth Preliminary Order of Forfeiture"), which covered certain escrow accounts created following the sale of Clarity stock to Experian ("the Clarity escrow accounts").  Doc. 720 at 10-11.  The genesis of these assets arose from Mr. Hallinan's ownership of stock in Clarity, 120 shares of which he transferred to Ms. Hallinan and 10 shares of which he transferred to Ms. Hallinan's daughter L.B.S. in December 2012.  Doc. 754 at 1-2.  Clarity was then acquired by Experian through a Stock Purchase Agreement ("SPA"), and some of the funds paid by Experian for the purchase of the Clarity stock, including the shares transferred to Ms. Hallinan and her daughter, were placed in escrow accounts, and these escrow accounts were the subject of the Fourth Preliminary Order of Forfeiture.  Id.[5]  Ms. Hallinan filed an ancillary petition asserting interests on her behalf and that of her daughter in money held in these accounts,

---

[5]The SPA used a specific method to calculate the amount to be paid to each Clarity shareholder, with the value applicable to Charles Hallinan's shares being paid into an escrow account ("First Hallinan Escrow") and a direct payment of $1.1 million to Charles Hallinan.  Doc. 756 at 32 (SPA § 2.4(a)(i)).  A calculated value of the shares of other members of the Hallinan family were to be paid into another escrow ("Second Hallinan Escrow") with additional direct payments to family members.  Id. (SPA § 2.4(a)(ii)).  The total value of the Hallinan family members' shares (excluding those which remained with Mr. Hallinan) to be paid into the Second Hallinan Escrow was $11,139,157, id. at 159 (SPA Exh. A), which is essentially the value of that escrow subject to forfeiture.  Fourth Preliminary Order of Forfeiture, Doc. 720 at 10-11 ($11,139,156.51).  As will be described, the forfeiture order and ancillary petition currently at issue pertain to the direct distribution to Linda Hallinan, which under the SPA would be a direct payment of $3,872,706.78 to her account at TD Bank.  Id. at 166 (SPA Exh. A Shareholder Payments).  A trust for her daughter was also to receive a direct payment from the Clarity sale, Doc. 756 at 167 (SPA Exh. A Shareholder Payments), but this asset is not subject to the forfeiture order and ancillary petition currently at issue.

6

Doc. 754 ("Second Ancillary Petition"), and the government filed a motion to dismiss the petition. Doc. 825. Relying on the same reasoning that applied to Ms. Hallinan's petition respecting the Whetstone promissory note, Judge Robreno granted the Government's motion to dismiss Ms. Hallinan's Second Ancillary Petition, finding that neither Ms. Hallinan's nor her daughter's interest in the Clarity escrow accounts was superior to the government's and neither could establish that she was a bona fide purchaser for value. Doc. 853 at 1 & n.1. Judge Robreno has entered a Fifth Partial Final Order of Forfeiture with respect to Linda Hallinan's and L.B.S.'s interest in the First and Second Hallinan Escrow Accounts. Doc. 887 (forfeiting "all right, title and interest of Linda Hallinan and L.B.S. . . . in . . . [the] ("Second Hallinan Escrow Fund.").

## III.   CURRENT ANCILLARY PETITION

This Report addresses assets listed in the Government's next preliminary forfeiture motion and Judge Robreno's corresponding March 10, 2021 forfeiture order ("Fifth Preliminary Order of Forfeiture"). Docs. 816 & 840. The court ordered the forfeiture of funds totaling $798,686.11, held in three Pershing accounts, into which Ms. Hallinan deposited the direct cash payments from the sale of her shares in Clarity to Experian. See Docs. 816 at 22; 840 at 10.[6] On April 15, 2021, Ms. Hallinan filed an ancillary petition

---

[6]With respect to the direct payment to Linda Hallinan, the government confirmed that on October 6, 2017, Experian wired $3,872,706.78 to Ms. Hallinan's TD Bank account. Doc. 816-1 (Affidavit of Litigation Financial Analyst Joseph Piccione) ¶ 6. Of this amount, Mr. Piccione traced transfers of $1,624,000 into the three identified Pershing accounts. Id. ¶¶ 7-8. Two of these accounts, totaling $1 million when initially transferred, are owned by Linda Hallinan, and at the time of Fifth Preliminary Order of Forfeiture, contained a total of $259,982.88. Id. ¶¶ 9-10. Ms. Hallinan placed the

asserting her interest and that of her daughter in the Pershing accounts.  Doc. 851 ("Third

Ancillary Petition").  The Government filed a motion to dismiss the ancillary petition,

arguing that Judge Robreno previously rejected the arguments that Ms. Hallinan sets

forth in her petition in rejecting her First and Second Ancillary petitions relating to the

Whetstone promissory note and the Clarity escrow accounts.  Doc. 882.  In response to

the motion to dismiss, Ms. Hallinan conceded that the "Court's determination of the

forfeitability of the Pershing funds is controlled, in part, by two prior opinions (Dkts. 823

& 853) which discuss the forfeiture of a promissory note issued by Whetstone Partners

and additional proceeds of the Clarity stock sale."  Doc. 884 at 2.  In addition, Ms.

Hallinan opposed the government's forfeiture claim based on a theory of "double

counting," arguing that "[f]orfeiting the money in the Pershing accounts in combination

with the three Clarity escrow accounts creates the anomaly of forfeiting more than 100%

of the allegedly forfeitable funds."  Id.[7]  In response, the Government argues that its

present motion to dismiss is wholly controlled by Judge Robreno's prior rulings and the

_____

remaining $624,000 into the third Pershing account for the benefit of L.B.S., and that
account still holds the entire amount transferred.  Id. ¶¶ 8, 11; Doc. 816 at 22
(government motion representing that $624,000 remains in the L.B.S. account).  Ms.
Hallinan has admitted that in addition to the funds placed in the escrow accounts, she
"received some money at the time of settlement" and "deposited her share proceeds" into
the three Pershing accounts.  Doc. 884 at 6.

   [7]Ms. Hallinan includes the term "cross-motion" in the title of her opposition to the
motion to dismiss.  Doc. 884 at 1.  However, no motion is referenced in the body of the
document other than a mention that the government's forfeiture claim should be
"dismissed," id. at 2, and I read the document as an opposition to both the government's
motion to dismiss and its forfeiture claim rather than as a motion.

"double counting" argument is specious and unripe.  Doc. 885 at 2.  I held oral argument

on July 23, 2021.  N.T. 7/23/21.

Ms. Hallinan concedes that Judge Robreno's prior rulings govern much of the

consideration of the Third Ancillary Petition regarding the Pershing accounts and that she

presents her arguments to preserve her appellate rights as to those issue.  Doc. 884 at 11.

For example, Ms. Hallinan again challenges the forfeitability of the assets rather than

presenting issues relevant to establishing a superior interest or that she was a bona fide

purchaser.  See Doc. 884 at 11-16; N.T. 7/23/21 at 5-6.  Judge Robreno's prior orders

settle the question of whether Ms. Hallinan may litigate issues of forfeitability, and her

arguments will not be revisited here.  Judge Robreno issued the Fifth Preliminary Order

of Forfeiture regarding the Pershing accounts on March 10, 2021, without objection from

Mr. Hallinan, establishing their forfeitability.  Doc. 840.  Thus, Ms. Hallinan's challenges

to the forfeitability of the Pershing accounts, see Doc. 884 at 11-16, should be rejected

for the reasons previously set forth by Judge Robreno.

Also, with respect to issues relevant to the ancillary petition – superiority and bona

fide purchaser status -- counsel conceded at the hearing that Ms. Hallinan relies on the

same arguments and evidence she relied on in her prior petitions opposing forfeiture of

the Whetstone promissory note and the Clarity escrow accounts.  N.T. 7/23/21 at 5-6.

Judge Robreno has already rejected these arguments for reasons set forth in his

Memorandum of February 22, 2021, addressing Ms. Hallinan's First Ancillary Petition.

Whetstone Op., 2021 WL 670066, at *4-6.  The court should not address issues

previously litigated and decided.

The only issue that has not yet been addressed is Ms. Hallinan's claim that forfeiture of the Pershing accounts amounts to double counting.[8]  According to Ms. Hallinan, forfeiture of the Pershing accounts in addition to the Clarity escrow accounts subject to the Fourth Preliminary Order of Forfeiture will amount to the forfeiture of more than one-hundred percent of Mr. Hallinan's interest in the Clarity shares.  Doc. 884 at 18.  The Government argues that Ms. Hallinan's argument is not appropriate at this preliminary stage of the forfeiture proceedings.  Doc. 885 at 2.

The Government and Ms. Hallinan disagree about the proper timing of her double counting argument.  The Government argues that that double counting comes into play if and when the Government obtains partial final orders of forfeiture exceeding $64.3 million, the total sum subject to forfeiture pursuant to the money judgments entered following Mr. Hallinan's conviction.  N.T. 7/23/21 at 27; see also Doc. 505 at 10-11 (forfeiture provision of Hallinan's Judgment).  Ms. Hallinan proposes an asset-by-asset accounting that does not permit forfeiture of more than Mr. Hallinan's interest in each asset.  However, as explained by the Government at the hearing, Ms. Hallinan's interest (including that of her daughter) in the 130 shares of Clarity is approximately $11.6 million, and the Government has not collected more than $11.6 million from Ms. Hallinan related to the Clarity stock sale.  N.T. 7/23/21 at 34.

---

[8]I assume for purposes of discussion that the government cannot forfeit the same asset twice.  Ms. Hallinan relies on a case in which the Seventh Circuit determined that forfeiting money received as bribes "once as cash [equity in the defendant's home] and a second time as building materials" used to make improvements to the home constituted double counting.  United States v. Genova, 333 F.3d 750, 762 (7th Cir. 2003).

At this point, Ms. Hallinan has conceded that the Pershing accounts "hold proceeds from the sale of Clarity . . . stock."  Doc. 884 at 1.  As previously discussed, when Clarity was purchased by Experian, some of the proceeds of the sale were placed in escrow accounts and "Linda Hallinan and the three trusts [for three Hallinan grandchildren, including Linda Hallinan's daughter], received some cash consideration" at the time of the sale.  Id. at 6.  Contrary to this statement in Ms. Hallinan's written submission, Ms. Hallinan's counsel argued at the hearing that the relevant escrow account contains the full amount of the purchase of Ms. Hallinan's Clarity shares.  N.T. 7/23/21 at 10.  The double-counting argument appears to derive from the nature of the Second Hallinan Escrow and how it was funded, which involved contributions from non-Hallinan shareholders.  Counsel asserted that approximately 45% of the money in the Second Hallinan Escrow was contributed by non-Hallinan sellers, which mechanism allowed Ms. Hallinan to receive her cash distribution at the time of the Clarity sale.  Id. Thus, Ms. Hallinan argues, forfeiture of the entire Second Hallinan Escrow along with the Pershing accounts would result in the forfeiture of more than 100% of Mr. Hallinan's interest in Clarity.  Id. at 10-12.

The problem with Ms. Hallinan's argument is that it is premature and assumes that 100% of the Clarity escrow accounts, including the amounts contributed by the non-Hallinan Clarity stockholders, will be forfeited.  At issue is a preliminary forfeiture order and whether Ms. Hallinan can establish her right to the assets that fall under that order. The Government concedes that when the partial final orders of forfeiture of the Clarity-related assets (escrow accounts and Pershing funds) exceed Mr. Hallinan's interest in

Clarity, Ms. Hallinan's challenge would be ripe.  N.T. 7/23/21 at 31-32.  Currently, the partial final order of forfeiture relating to the Clarity escrow accounts applies only to Linda Hallinan's interest and that of her daughter in the Clarity escrow accounts, and not the direct distributions to Ms. Hallinan, a portion of which remains in the Pershing account.  Doc. 887.  Thus, double counting has not come into play at this point.[9]

## IV.  **CONCLUSION**

In his prior decision rejecting similar challenges to the Preliminary Orders of Forfeiture dealing with the Whetstone promissory note and Ms. Hallinan's interest in the Clarity escrow accounts, Judge Robreno rejected all but one of Ms. Hallinan's challenges to the Fifth Preliminary Order of Forfeiture dealing with the Pershing accounts.  See Whetstone Op., 2021 WL 670066, Doc. 853.  The only issue new to this discussion is Ms. Hallinan's argument that forfeiture of the Clarity escrow accounts along with the Pershing accounts will result in forfeiture of more than 100% of Mr. Hallinan's interest in the Clarity stock.  Because the Government has not obtained a final partial order of forfeiture with respect to the entirety of the Clarity escrow accounts, the issue is not ripe for consideration.

---

[9]Ms. Hallinan has asked the court for expedited review of this ancillary petition. Doc. 884 at 19.  She states without any evidentiary support that it is a substantial hardship to support herself and her daughter without access to these funds, id., despite the fact that she has had the use of and withdrawn almost three-quarters of the funds that were originally transferred into her two personal Pershing accounts before the accounts were frozen in connection with the forfeiture proceedings.  Nevertheless, I have accommodated the request and held a hearing and addressed the petition as expeditiously as possible.

Therefore, I make the following

## **R E C O M M E N D A T I O N**

AND NOW, this 17th day of August, 2021, IT IS RESPECTFULLY

RECOMMENDED that the Government's Motion to Dismiss the Ancillary Petition be

GRANTED and the Ancillary Petition be DISMISSED.  The parties may file objections

to this Report and Recommendation.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely

objections may constitute a waiver of any appellate rights.


BY THE COURT:


/s/ ELIZABETH T. HEY
_____
ELIZABETH T. HEY, U.S.M.J.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES M. HALLINAN | : | NO.  16-130-1 |

_____
LINDA B. HALLINAN, in her own capacity
and as Guardian for her minor child

**O R D E R**

AND NOW, this          day of                    , 2021, upon consideration of

the Fifth Preliminary Order of Forfeiture (Doc. 840), the Ancillary Petition filed by Linda

Hallinan (Doc. 851), the Government's Motion to Dismiss the Ancillary Petition (Doc.

882), Petitioner's motion to dismiss the Government's forfeiture claim (Doc. 884), the

subsequent briefing (Docs. 885, 886, 891), the oral argument held on the motion, and

after review of the Report and Recommendation of United States Magistrate Judge

Elizabeth T. Hey, IT IS ORDERED that:

1.    The Report and Recommendation is APPROVED AND ADOPTED.

2.    The Government's Motion to Dismiss the Ancillary Petition (Doc. 882) is
GRANTED and the Third Ancillary Petition (Doc. 851) is DISMISSED pursuant to
Federal Rule of Criminal Procedure 32.2(c)(1)(A).

BY THE COURT:

_____
EDUARDO ROBRENO, J.